**Thomas Lloyd CALHOUN, Thomas Leon Calhoun, Jr., and Sherie Calhoun Lacy, Plaintiffs–Appellees,**

v.

**Alfred Quincy CAMPBELL, Jr., Defendant–Appellant.**

Supreme Court of Tennessee, at Jackson.

Dec. 27, 1988.

S. Shepherd Tate, Patrick B. Mason, Martin, Tate, Morrow and Marston, P.C., Memphis, for defendant-appellant.

Jere B. Fones, Memphis, for plaintiffs-appellees.

## OPINION

HARBISON, Chief Justice.

This case involves the effect of a recent statute, 1983 Tenn. Public Acts, chapter 432,[1] upon the interpretation and construction of a will which was written in 1935 and probated in 1939. The question presented is whether grandchildren by adoption constitute "lineal descendents" of an income beneficiary under a trust created by her great-uncle. The trial court held that the adoptive grandchildren of the life beneficiary (who are the great-great-great-nieces and nephews by adoption of the testator) did not constitute her "lineal descendants" within the meaning of the will. The Court of Appeals reversed. After careful consideration, we reinstate the judgment of the trial court.

### A. *Factual Background*

There is no dispute as to the execution of the will, the administration of the estate and the family membership. The facts were either stipulated or were apparent from the terms of the will.

The testator was Mr. Leon Hunt of Memphis, Tennessee, whose will was executed on October 17, 1935. He died on February 15, 1939, and his will was duly admitted to probate three days later. The will is six pages in length. All parties agree that it was prepared by an attorney. Under date

---

1. Now codified as portions of T.C.A. § 36–1–126(c) and (d).

of October 15, 1935, two days before the will was executed and attested, there appears in the margin of the last page the following handwritten notation:

In our opinion this will is in satisfactory form and meets the Tennessee legal requirements. 10/15/35 Canada & Russell by Edward P. Russell.

There is no evidence that Mr. Russell, a well known Memphis attorney at that time, actually drafted the will. The trustee named in the will was Union Planters National Bank and Mr. Russell may have reviewed the will for the Trust Department.

Nothing appears in the record concerning the personal history or the age of the testator, Mr. Hunt. He named the Union Planters National Bank & Trust Company his executor and trustee, conferring upon it in both capacities broad administrative powers which are not at issue here.

There is no indication in the record that Mr. Hunt was survived by a wife or children. He gave all of his property "of a purely personal character" to his niece, Mrs. Martha Hunt Campbell, and made small bequests to two household servants. All of the rest of the estate was bequeathed to Union Planters as trustee.

The trustee was directed to pay the net income from the trust estate to the testator's niece, Mrs. Campbell, during her lifetime.

Upon her death, the trustee was directed to divide the trust estate into two equal parts, the income from one to be paid to Mrs. Campbell's daughter, Mrs. Judith Campbell Calhoun, for life. The other part was to be held in trust for Mrs. Campbell's son, Alfred Quincy Campbell, Jr. The corpus was to be paid over to him at specified times, and all of it was to be delivered to him free of trust after he reached his thirty-fifth birthday.

There can be no question but that these three persons, that is testator's niece and her two children, were the immediate beneficiaries of the trust estate. The children of Mrs. Campbell, of course, were the great-niece and great-nephew of the testator. The great-niece, Mrs. Judith Campbell Calhoun, was born September 7, 1899. She was thirty-six years of age when the will was executed and forty years of age when it was probated. The great-nephew, Alfred Quincy Campbell, Jr., was born February 5, 1910. He was twenty-five years old when the will was executed and twenty-nine when it was probated.

The great-niece was referred to by her married name, Calhoun, and there was a reference in the will that the life income payable to her, after the death of her mother, was to be free from any marital rights of her present or any future husband. The parties have stipulated that she had no children, either natural or adopted, prior to the time the will was probated.

The first life tenant, Mrs. Martha Hunt Campbell, niece of the testator, lived until January 15, 1951. The trustee paid the net income from the trust estate to her until her death. At that time the trust corpus was divided into two parts in accordance with the terms of the will, and one of these was delivered outright to the great-nephew of testator, Alfred Quincy Campbell, Jr., since he was forty-one years of age at the time of his mother's death.

Mrs. Judith Campbell Calhoun, the great-niece of testator, lived until September 10, 1983. She was paid the income from the remaining corpus of the trust from the time of the death of her mother in 1951 until her own death at age eighty-four.

The devolution of the remaining trust corpus after the death of Mrs. Calhoun is the subject of the present litigation. The pertinent family history is that Mrs. Calhoun and her husband adopted a son, Thomas Leon Calhoun on February 8, 1940, about one year after the death of the testator and the probate of his will. Thereafter, they had a natural son who was born on September 23, 1940, but he died without children, natural or adopted, in January 1962.

The adopted son of Mrs. Calhoun, however, was twice married and left three surviving children, who are the plaintiffs in the present case. The adopted son himself died on December 13, 1963, nearly twenty

years before the death of his mother, Mrs. Judith Campbell Calhoun.

The terms of the will involved in the present case are as follows:

Upon the death of the said Mrs. Judith Campbell Calhoun, leaving lineal descendents surviving, the Trustee shall divide the portion of the trust estate held for her use and benefit into as many parts as there are children of the said Mrs. Judith Campbell Calhoun surviving, the children of any previously deceased child taking in equal shares per stirpes the share to which their parent, if living, would have been entitled to receive, and the Trustee shall hold the same for the use and benefit of such children, remitting the net income derived therefrom to them or for their use and benefit until they severally become twenty-one (21) years of age at which time the trust for each such one shall terminate and the corpus of his or her share shall be paid over and delivered to him or her, as the case may be. In the event of the death of any child prior to attaining the age of twenty-one years, leaving lineal descendents, his or her share of the trust estate shall be paid over and delivered by the Trustee to such lineal descendents and if there be no such lineal descendents, the share of such one in the trust estate shall be divided by the Trustee and added to the trust in this Paragraph B of Item Five hereinabove created and shall be governed by the terms and provisions thereof as if it had originally been a portion of such trusts.

Upon the death of the said Mrs. Judith Campbell Calhoun, leaving no lineal descendents surviving, the portion of the trust estate held for her use and benefit shall be added by my said Trustee to the trust next hereinafter created for the use and benefit of my nephew, Alfred Quincy Campbell, Jr., and be governed by the terms and provisions thereof as if it had originally been a portion of such trust.

There were similar provisions for devolution of the portion of the great-nephew in the event of his death prior to termination of the trust, but, as stated, he received his portion outright upon the death of his mother in 1951. In Item 5, Paragraph C, of the will there is a provision that in the event of the death of all three of the named beneficiaries and failure of "the lineal descendents" of Mrs. Judith Campbell Calhoun and Alfred Quincy Campbell, Jr. while the trust was still being held by the trustee, then

... my Trustee shall distribute such portion of my trust estate to my heirs and distributees in accordance with the laws of descent and distribution then in force in the state of Tennessee governing intestate property.

Mr. Alfred Quincy Campbell, Jr. was still living at the death of his sister in 1983, and he claimed the trust estate, contending that his sister had died without "lineal descendents." As stated, her three adoptive grandchildren claimed the trust estate, insisting that even though their father was adopted by Mrs. Calhoun, they were "lineal descendents" of their grandmother within the meaning of the will.

The trustee was made a party to the litigation. It paid into court the remaining corpus of the trust, amounting to approximately $246,000.00, and was discharged from the litigation.

Essentially the claim of the adoptive grandchildren of Mrs. Calhoun rests upon the terms and provisions of 1983 Tenn. Public Acts, chapter 432, which became effective May 26, 1983, less than four months before the death of Mrs. Calhoun on September 10, 1983. The constitutionality of that statute, if applied to this case, was challenged by Mr. Campbell. The state Attorney General was duly made a party to the litigation. He filed a response, generally contending that the statute was constitutional unless it retroactively divested Mr. Campbell of a vested interest. The Attorney General also contended that it was not necessary to reach the constitutional issue in order to dispose of this case.

### B. The Adoption Statutes

The parties are in general agreement that until 1968 the Tennessee statutes dealing with inheritance by adopted children

did not specifically provide for inheritance from collateral kindred of either adoptive parent or the ancestors of such collateral kindred. 1968 Tenn. Public Acts, chapter 406, now codified as part of T.C.A. § 36–1–126(a) and (b), provided that "the adopted child and his descendents" could inherit not only from the adoptive parents but also from lineal and collateral kindred of either adoptive parent and the ancestors or descendents of such kindred.

Further, by 1976 Tenn. Public Acts, chapter 751 the General Assembly provided that in the construction of wills and other instruments, an adopted child and the descendents of such a child should be deemed to be included "within a class created by any limitation contained in such instrument restricting a devise, bequest or conveyance to the lawful heirs, issue, children, descendents, or the like, as the case may be of the adoptive parents, or of an ancestor or descendant of one of them, unless a contrary intention clearly shall appear" in such instrument or unless a particular estate so limited shall have previously vested. The provisions of this statute, which became effective on March 29, 1976, are codified as portions of T.C.A. § 36–1–126(b) and (c).

State law prior to the 1983 amendment to the foregoing statutes was considered by the Tennessee Court of Appeals in the case of *Banovic v. Davis*, 642 S.W.2d 153 (Tenn. App.1982). There it was held that grandchildren by adoption did not constitute "issue per stirpes" within the meaning of a will and codicils executed between 1944 and 1946 and probated in 1949. The opinion contains a full discussion of state law up to that time.

Essentially the court held that under the law in effect at the time of the probate of the will, the term "issue" did not include adopted children. The repeated use of that term throughout the will indicated to the court a "contrary intent" to the inclusion of adopted children. Accordingly the other terms of T.C.A. § 36–1–126 were not deemed to be controlling.

The court relied upon *Union Planters National Bank v. Corbitt*, 63 Tenn.App. 430, 474 S.W.2d 139 (1971) where children adopted by a niece after the death of the testator were held not to be included within the words "issue of my said niece."

In the course of the *Banovic* opinion, after citing the *Union Planters* case, *supra*, the Court of Appeals said:

> The quoted authority was decided after the present will was written and after the death of the testatrix, but the authorities cited therein antedate the execution of the will and death of the testatrix, and the law declared therein had long been recognized and was the law at the time of the execution of the will and the death of the testatrix.

642 S.W.2d at 157.

The court noted that the statutes in force at the death of the testatrix made adopted children heirs and next of kin to the adoptive parents but not to the relatives of such parents.

The foregoing case would be dispositive of the claims of the plaintiffs in the present case if the second life tenant, Mrs. Calhoun, had died before the effective date of the 1983 amendment upon which the plaintiffs rely.

1983 Tenn. Public Acts, chapter 432, which became effective on May 26, 1983, amended the 1976 statute in several respects and added some provisions to it. Insofar as pertinent here the 1983 statute reinforced the attempt of the 1976 statute to create for an adopted child the same status as that of a natural child with respect to rights of inheritance from adoptive parents and their ancestors, collaterals and kindred. The rule of construction contained in the 1976 statute was directed to apply whether the testator or party creating an interest by a legal instrument died before or after March 29, 1976, or before or after an adoption, except for interests which had vested "in interest and in possession." The 1976 rule of construction, however, was not to apply in the case of an adoption of a person over twenty-one years of age, and the following sentence was added, now codified at T.C.A. § 36–1–126(d):

> The phrase "contrary intention clearly shall appear" as set forth in this section

shall not be found by any court to exist by use in such instrument of terms such as "issue," "children," or similar legal terms, unless the instrument specifically states that adopted children are to be excluded from such class.

## C. *Our Conclusions*

The decision of the Court of Appeals for the Western Section in the present case conflicts in several respects with the decision of the Middle Section in the recent case of *Third National Bank in Nashville v. Stevens,* 755 S.W.2d 459 (Tenn.App. 1988). In that case, a will was executed in 1962 and probated in 1965. A life tenant did not die until September 15, 1986, well after adoption of the 1976 and 1983 statutes above referred to. Upon the death of the life tenant the remainder devolved upon his "bodily issue, if any." Adopted daughters of the life tenant were held not entitled to the remainder interest. On July 18, 1988, this Court denied review of the decision of the Court of Appeals in the *Third National Bank* case.

We are of the opinion that the decision in that case and the authorities cited and discussed therein are controlling.

■ Even though the draftsman is not clearly identified, the parties agree that the will in the present case was drawn by an attorney. The testator, through his draftsman, provided for future changes in the law of intestate distribution by providing that in the event of a total failure of the life beneficiaries and their lineal descendents, the corpus would be distributed to the testator's own "heirs and distributees in accordance with the laws of descent and distribution *then in force* in the state of Tennessee governing intestate property." (Emphasis added.) It is obvious that the draftsman knew how to refer to future changes in the law and to anticipate them when this was the intention of the testator.

As pointed out in the case of *Banovic v. Davis,* 642 S.W.2d 153, 156 (Tenn.App. 1982), the fact that the testatrix

> ... was willing for future enactments to control ultimate distribution of her estate in the unlikely event of complete

failure of issue is not evidence of an intent to allow future enactment to change her intent under other circumstances.

The court pointed out that unless a contrary intention appears in its terms, a will is construed and takes effect as if executed immediately prior to the death of the testator. T.C.A. § 32–3–101.

The testator may, of course, make reference to future changes in the law, if desired. In the present case he did so with respect to the ultimate distribution of the trust corpus in the event of complete failure of beneficiaries.

There is no indication, however, that the testator in the present case had any intent to incorporate future changes in the law relative to the status of adopted children. At the time he wrote the will and at the time he died, adopted children would not have been included as "lineal descendents" under the will of a collateral relative. The adoption in this case occurred after the death of the testator and, insofar as the record discloses, was completely unknown to him. There is no evidence of any history of adoption in the family, nor anything in the will to indicate that the testator, at the time when he executed his will, would have intended that the term "lineal descendents" or the term "children" should include an adopted child of his great-niece.

■ The provisions of the 1976 and 1983 statutes are rules of construction as well as rules of evidence. Both reflect a legislative policy to confer, as nearly as may be possible, upon adopted children the same legal status as that occupied by natural children. This Court supports that policy, but the policy, of necessity, must have some limits when applied to the past. Persons drafting wills and providing for the devolution of property ordinarily deal with the state of the law at the time of the execution of an instrument or that expected to prevail at the time of probate of a will, unless they otherwise indicate. The intent of the testator is the governing principle in the interpretation and construction of all wills. In this case that intent must

be gleaned primarily from the terms of the legal instrument itself and from such facts and circumstances as the parties have been able to adduce after the passage of forty-four years from the date of probate. Further, where the language of the instrument is unclear, the "community attitudes" prevalent at the time, as evidenced by the law then in effect, provide evidence of the testator's intent. Rein, *Relatives by Blood, Adoption and Association: Who Should Get What and Why*, 37 Vand.L.Rev. 711, 732 (1984).

In the instant case the Court of Appeals concluded that the testator probably had no actual intention with respect to the question of adopted children and that, therefore, that question should be determined in accordance with general public policy obtaining at the termination of the life estates. The court also doubted that a legal draftsman intending to exclude adopted children would rely solely upon the term "lineal descendents."

We respectfully disagree. Just as the draftsman provided for future changes in the law with respect to the determination of the testator's nearest of kin in case of intestacy, the draftsman could very easily have inserted a phrase providing that the eligible lineal descendents of the life tenant would be determined in accordance with the law "then in force" at the termination of the life estates. This the draftsman did not do. The term "lineal descendents" is used throughout the will referring both to children of the life tenant and to the generation after those children. Clearly the testator intended that his niece and her children, whom he knew, benefit from his will, and he also intended that his property be held for their immediate families. The term "lineal" excluded collateral relatives of any of the future beneficiaries, and the use of that adjective in connection with the term "descendants" was a common method used to exclude adopted children of collateral relatives at the time the will was prepared.

2. *E.g., Epperson v. White,* 156 Tenn. 155, 166, 299 S.W. 812 (1927); *Fransioli v. Podesta,* 21

As pointed out by counsel for the appellees, adopted children have been considered to be "lineal descendents" for purposes of intestate succession from their adoptive parents under statutes enacted long before the present will was written. *See Meriwether v. Fourth & First Bank & Trust Co.,* 153 Tenn. 696, 285 S.W. 34 (1925). State statutes did not provide an actual right of inheritance from collateral relatives until 1968, although, of course, a will or other legal instrument could include adopted children if the donor so desired. *See Ross v. Bateman,* 200 Tenn. 148, 291 S.W.2d 584 (1956). For an example of a trust expressly including legally adopted children *see Karsch v. Atkins,* 203 Tenn. 350, 313 S.W.2d 253 (1958).

A number of states have enacted "pro-adoption" statutes such as those enacted in Tennessee in 1976 and 1983. Courts must recognize, however, that a legislative enactment cannot really change the intention of a previously deceased person as expressed in that person's probated will. *See Scribner v. Berry,* 489 A.2d 8 (Maine 1985). In that case, the court held a statute similar to those in Tennessee should be applied to wills executed before their effective date in cases where the testator survives that effective date so that the testator and the scrivener of the will may have an opportunity to consider the effect of such an enactment.

The right to make a will and to dispose of property as one chooses is not absolute. Indeed it frequently is referred to in the cases as a privilege, rather than an absolute right.[2] Nevertheless, once the privilege has been exercised and effectuated by death, ordinarily it does not lie within the province of the General Assembly to change the expressed intention of the testator or testatrix. That intention will be given effect unless it contravenes some positive rule of law or public policy. Thus, in the case of *National Bank of Commerce v. Greenberg,* 195 Tenn. 217, 258 S.W.2d 765 (1953) this Court upheld and

Tenn.App. 577, 113 S.W.2d 769 (1937).

**750**

enforced a provision providing for termination of a trust interest if the beneficiary were legally adopted by someone outside of the immediate family of the testator and if her name were changed, prior to her eighteenth birthday. No public policy, then or now, prohibited the exclusion of adopted children from the terms of a will.

As previously stated, this Court endorses and supports the policy of the inclusion of adopted children wherever possible. On the other hand, very strong considerations of public policy also favor a person's "free control and untrammeled dominion over his own property." *Hughes v. Boyd,* 34 Tenn. 512, 516 (1855).

In our opinion, the testator intended that his will should be construed under the law prevailing at the time of his death. So construed, the terms of the trust did not include adopted children of those collateral relatives of the testator who were the primary beneficiaries. Considering all of the terms of the will and such facts as are known concerning its execution, we are of the opinion that the ultimate disposition of the corpus must be controlled by the intent of the testator as evidenced by the terms of the will itself and the law in effect at the time of execution, and not by the subsequent legislation enacted many years after the death of the testator. We do not deem it necessary to pass upon the constitutionality of the statutes because the will of the testator clearly indicates that the devolution of the remainder interests was to be controlled by the law in effect when he died.

The Court wishes to express its appreciation to counsel for both parties in this case for their excellent briefs and oral arguments.

The judgment of the Court of Appeals is reversed and that of the trial court is reinstated. Costs incident to this proceeding will be paid out of the proceeds of the estate being held in the chancery court. The cause is remanded to that court for any further proceedings which may be necessary.

COOPER, DROWOTA and O'BRIEN, JJ., and McLEMORE, Special Judge, concur.