# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
August 22, 2017 Session

## IN RE ESTATE OF VERONICA STEWART

**Appeal from the Chancery Court for Warren County**
No. 3159P   Larry B. Stanley Jr., Chancellor

_____

### No. M2016-02355-COA-R3-CV

_____

This appeal arises from a will contest. The contestant insists the purported Last Will and Testament of the decedent, dated June 19, 2015, is invalid because the attesting witnesses, who duly executed the attestation affidavit, failed to affix their signatures to the will as required by the Tennessee Execution of Wills Act at the time the will was executed. The proponent insists the will was validly executed based on a 2016 amendment to Tenn. Code Ann. § 32-1-104, which applies to wills executed prior to July 1, 2016, and states "to the extent necessary for the Will to be validly executed, witness signatures affixed to an affidavit meeting the requirements of § 32-2-110 shall be considered signatures to the Will." The trial court ruled that the 2016 amendment did not apply because the testator died before it went into effect. Consequently, the 2015 will was invalid because it was not executed in accordance with the law then in effect. We have determined that the 2016 amendment to Tenn. Code Ann. § 32-1-104 applies retrospectively to wills executed prior to July 1, 2016, because that is the clear and unambiguous intent of the legislation. We have also determined that the retrospective application of the law does not impair any vested legal right of the contestant. Therefore, we reverse and remand for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

FRANK G. CLEMENT JR., P.J., M.S. delivered the opinion of the Court, in which ANDY D. BENNETT, J. AND J. STEVEN STAFFORD, P.J., W.S., joined.

Josh A. McCreary, Murfreesboro, Tennessee, for the appellant, Lazaro Serna.

Michael D. Galligan, McMinnville, Tennessee and Thomas K. Austin, Dunlap, Tennessee, for the appellee, Derwood Stewart.

**OPINION**

The facts of this case are not in dispute. On June 19, 2015, Veronica Stewart ("Ms. Stewart") executed her Last Will and Testament ("the will"). Ms. Stewart signed the bottom of each of the three pages of her will in the presence of two witnesses, and the witnesses signed the attestation affidavit in the presence of Ms. Stewart, each other, and a notary public; however, the witnesses failed to sign the will.

Ms. Stewart died on September 16, 2015, without a surviving spouse or issue. On September 22, the will was admitted to probate in the Chancery Court for Warren County, Tennessee, and the court issued letters testamentary to the executor of the estate, Ms. Stewart's accountant. The primary beneficiary under the will was Lazaro Serna ("Mr. Serna"), an unrelated individual. Three days later, Ms. Stewart's father, Derwood Stewart ("Mr. Stewart"), who was an heir-at-law, filed a verified complaint contesting the will. Mr. Serna filed an answer in which he insisted that the will was valid.

On January 11, 2016, Mr. Stewart filed a motion for summary judgment. Relying primarily on *In re Estate of Morris*, M2014-00874-COA-R3-CV, 2015 WL 557970, at *1 (Tenn. Ct. App. Feb. 9, 2014), Mr. Stewart argued that the will did not meet the execution requirements set forth in Tenn. Code Ann. § 32-1-104, because the witnesses to Ms. Stewart's will failed to sign the will.

On April 16, 2016, Governor Haslam signed House Bill 1472 into law. It was subsequently codified as an amendment to Tenn. Code Ann. § 32-1-104. Pursuant to the amendment, wills executed prior to July 1, 2016, are validly executed if the witness signatures are affixed to an affidavit in compliance with Tenn. Code Ann. § 32-2-110, provided that (1) the signatures are made contemporaneously with the testator's signature, and (2) the affidavit contains language meeting all of the requirements of Tenn. Code Ann. § 32-1-104(a).

Less than a week later, Mr. Serna filed a response to Mr. Stewart's motion for summary judgment and a cross-motion for summary judgment, arguing that under the 2016 amendment to Tenn. Code Ann. § 32-1-104, Ms. Stewart's will was validly executed. Mr. Stewart then filed a response to Mr. Serna's motion and a notice with the Tennessee Attorney General that he was challenging the constitutionality of the 2016 amendment. In his response, Mr. Stewart argued that a retrospective application of the 2016 amendment to the will would violate Article I, § 20 of the Tennessee Constitution because it would interfere with Mr. Stewart's vested rights as an heir-at-law. Mr. Serna and the Tennessee Attorney General both argued that a retrospective application of the 2016 amendment did not interfere with any vested right of Mr. Stewart.

The trial court ruled:

> [T]he Court finds that the law enacted on April 19, 2016, would have resulted in the decedent's Will being perfectly executed and admissible in this Court had it been in effect at the time of her death. The Court is required to follow the Testamentary laws that were in place at the date of death. Therefore, at the date of her death the decedent's Will did not comply with the rigorous requirements of Tennessee Code Annotated § 32-1-104 and is therefore invalid.

This appeal by Mr. Serna followed.

Mr. Serna insists that Tenn. Code Ann. § 32-1-104, as amended by Public Chapter 843 of the Acts of 2016, applies retrospectively to validate the execution of Ms. Stewart's 2015 will because the legislature expressly stated that it applies to wills executed prior to July 1, 2016. Mr. Stewart contends that the law in effect when Ms. Stewart died in 2015 applies. He argues that applying the 2016 amendment retrospectively would violate Article I, § 20 of the Tennessee Constitution by impairing his vested legal right of inheritance as the decedent's heir-at-law. Mr. Serna counters by arguing that the retrospective application of the amendment does not impair any of Mr. Stewart's vested rights.

## STANDARD OF REVIEW

This court reviews the granting of a motion for summary judgment de novo without a presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015) (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)). Accordingly, this court must make a fresh determination of whether the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Id.*; *Hunter v. Brown*, 955 S.W.2d 49, 50-1 (Tenn. 1997).

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. In this case, there are no disputed facts, and the issues present a question of law. Our review of a trial court's determinations on issues of law is de novo, without any presumption of correctness. *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 895 (Tenn. 2011).

## ANALYSIS

The first issue for our consideration is whether the 2016 amendment to Tenn. Code Ann. § 32-1-104 retrospectively applies to the decedent's will.

I. THE TENNESSEE EXECUTION OF WILLS ACT

The execution of attested wills in Tennessee is governed by the Tennessee Execution of Wills Act codified in Tenn. Code Ann. § 32-1-104. *In re Estate of Chastain*, 401 S.W.3d 612, 618 (Tenn. 2012). When the will was executed in 2015, the mandatory requirements for the valid execution of an attested will[1] pursuant to the Tennessee Execution of Wills Act were set forth in Tenn. Code Ann. § 32-1-104:

(a) The execution of a will, other than a holographic or nuncupative will, must be by the signature of the testator and of at least two (2) witnesses as follows:

(1) The testator shall signify to the attesting witnesses that the instrument is the testator's will and either:

(A) The testator sign;

(B) Acknowledge the testator's signature already made; or

(C) At the testator's direction and in the testator's presence have someone else sign the testator's name; and

(D) In any of the above cases the act must be done in the presence of two (2) or more attesting witnesses.

(2) The attesting witnesses must sign:

(A) In the presence of the testator; and

(B) In the presence of each other.

Tenn. Code Ann. § 32-1-104.

---

[1] There are three types of wills: attested, holographic, and nuncupative. *See* 1 Jack W. Robinson, Sr., Jeffrey Mobley, and Andra J. Hedrick, *Pritchard on Wills and Administration of Estates*, § I-12 (Matthew Bender, 7th ed. 2009). The decedent's will is an attested will. The legal requirements for executing a valid will of each type are specified by statute. *See In re Estate of Boote*, 198 S.W.3d 699, 722 (Tenn. Ct. App. 2005). Tenn. Code Ann. §§ 32–1–104 and 32–1–109 apply to attested wills. Tenn. Code Ann. §§ 32–1–105 and 32–1–110 apply to holographic wills. Tenn. Code Ann. § 32–1–106 applies to nuncupative wills.

In February 2015, this court rendered a decision in a will contest, the facts of which are substantially similar to those at issue here, and the execution requirements outlined in Tenn. Code Ann. § 32-2-104 were dispositive of the case.[2] *In re Estate of Morris*, 2015 WL 557970, at *2. The *Morris* court concluded that "the signature of the witnesses on the affidavit, without having signed the will, does not satisfy the statutory formalities for executing a will in this state." *Id*. at *4. As such, the court held that the decedent died intestate. *Id*.

The Tennessee Supreme Court denied permission to appeal on June 15, 2015. Shortly thereafter, House Bill 1472 was introduced in the legislature to address the legal consequences of the *Morris* decision. The bill was approved by both chambers, and, on April 19, 2016, the Governor of Tennessee signed House Bill 1472 into law, which was subsequently designated as Public Chapter 843 of the Acts of 2016 and codified as an amendment to Tenn. Code Ann. § 32-1-104. The amended portion of the statute, which was added as subsection (b), reads:

> (b) For wills executed prior to July 1, 2016, to the extent necessary for the will to be validly executed, witness signatures affixed to an affidavit meeting the requirements of § 32-2-110 shall be considered signatures to the will, provided that:
>
> > (1) the signatures are made at the same time as the testator signs the will and are made in accordance with subsection (a); and
> >
> > (2) the affidavit contains language meeting all of the requirements of subsection (a). . . . If the witnesses signed the affidavit on the same day that the testator signed the will, it should be presumed that the witnesses and the testator signed at the same time, unless rebutted by clear and convincing evidence. If, pursuant to this subsection (b), witness signatures on the affidavit are treated as

---

[2] The testator signed his will in the presence of two attesting witnesses. *In re Estate of Morris*, 2015 WL 557970, at *2. Directly under the signature of the testator appeared the word AFFIDAVIT, which represented the title to and the beginning of the attestation affidavit. *Id*. As is the case here, the *Morris* affidavit stated that the witnesses signed the will in the sight and presence of the testator and each other. *Id*. The affidavit also stated that the witnesses intended to witness the testator's Last Will and Testament. *Id.* The witnesses further declared that the testator was, to the best of their knowledge, over the age of eighteen; under no duress or constraint; of sound and disposing mind, memory and understanding; and in all respects competent to make a will. *Id*. The witnesses affixed their signatures at the end of the attestation affidavit, and the notary public's acknowledgement immediately followed the witnesses' signatures. *Id*.

signatures on the will, the affidavit shall not also serve as a self-proving affidavit under § 32-2-110. Nothing in this subsection shall affect, eliminate, or relax the requirement in subsection (a) that the testator signed the will.

Tenn. Code Ann. § 32-2-104(b) (2016).

When interpreting a statute, our role is to ascertain and effectuate the legislature's intent. *Stevens ex rel. Stevens v. Hickman Cmty. Health Care Servs., Inc.*, 418 S.W.3d 547, 553 (Tenn. 2013). We must presume that the legislature intended to give each word of the statute its full effect. *Id*. Additionally, when the statutory language is unambiguous, we must accord the language its plain meaning and ordinary usage. *Id*.

Simply put, the language in the 2016 amendment is straightforward and unambiguous. Tenn. Code Ann. § 32-2-104(b) states, "For wills executed prior to July 1, 2016, to the extent necessary for the will to be validly executed, witness signatures affixed to an affidavit meeting the requirements of § 32-2-110 shall be considered signatures to the will." Clearly, the 2016 amendment to Tenn. Code Ann. § 32-2-104 was intended to provide relief for testators who believed they had executed a valid will prior to July 1, 2016, when the two witnesses duly executed the attestation affidavit at the same time as the will was executed by the testator, but the witnesses failed to sign the will itself. For these reasons, we conclude that the legislature intended for the 2016 amendment to apply to all wills executed prior to July 1, 2016, notwithstanding whether the testator died before the law went into effect.

Having made this determination, we will now determine whether the retrospective application of the 2016 amendment to the facts of this case violates Article I, § 20 of the Tennessee Constitution.

## II. VESTED RIGHTS OF AN HEIR-AT-LAW

Mr. Stewart argues that the right of an heir-at-law to inherit property vests at the time of the decedent's death and that a subsequent law cannot be applied retrospectively to disturb vested rights. This contention is based in part on the Supreme Court's ruling in *Stewart v. Sewell*, 215 S.W.3d 815, 826 (Tenn. 2007), in which the Court stated, "[T]he law in effect when the testator dies controls all substantive rights in the estate, whether vested or inchoate."[3] (quoting *Fell v. Rambo*, 36 S.W.3d 837, 845 (Tenn. Ct. App.

_____

[3] In *Stewart*, 215 S.W.3d at 826, after the Court stated the principle of law that "[s]tatutes are presumed to operate prospectively unless the legislature clearly indicates otherwise," the Court noted that "[a]t the time Clara [Stewart] died, Tennessee Code Annotated section 32-3-111 was not in effect" and found that "[n]othing in the language of the statute indicates that the legislature intended it to apply

(continued…)

2000)). Thus, he contends, applying the 2016 amendment retroactively constitutes a constitutionally impermissible application of a statute that would adversely affect his vested right as an heir-at-law.

We begin the analysis with the strong presumption that the statute is constitutional. *Gallaher v. Elam*, 104 S.W.3d 455, 459 (Tenn. 2003). This presumption requires us to resolve any doubt we may have as to the validity of the statute in favor of its constitutionality. *Id.*

Article I, § 20 of the Tennessee Constitution provides "[t]hat no retrospective law, or law impairing the obligations of contracts, shall be made." The "courts of this state have long held that, despite the prohibition against retrospective laws contained in Article I, § 20, 'not every retrospective law is objectionable in a constitutional sense.'" *Commissioners of the Powell-Clinch Utility Dist. v. Utility Mgt. Review Bd.*, 427 S.W.3d 375, 383-84 (Tenn. Ct. App. 2013) (quoting *Estate of Bell v. Shelby County Healthcare Corp.*, 318 S.W.3d 823, 829 (Tenn. 2010)). Moreover, this constitutional provision applies only to retrospective statutes that create new rights, take away vested rights, or impair existing contractual obligations. *Doe v. Sundquist*, 2 S.W.3d 919, 923 (Tenn. 1999).

The Tennessee Supreme Court has identified four factors to consider when deciding whether a retrospective law impairs a vested right under the Tennessee Constitution, namely: (1) whether a retrospective application of the statute advances or impedes the public interest; (2) whether a retrospective application "gives effect to or defeats the bona fide intentions or reasonable expectations" of the persons involved; (3) whether the new statute surprises individuals who have "long relied on a contrary state of the law;" and (4) "the extent to which a statute appears to be procedural or remedial." *Id.* at 924 (quoting *Ficarra v. Department of Regulatory Agencies*, 849 P.2d 6 (Colo. 1993) for the first three factors). None of the factors are dispositive, and because factors (2) and (3) are closely related, they can be analyzed together. *Id.* We will discuss each factor in turn.

## A. Public Interest

The Tennessee Execution of Wills Act[4] is primarily concerned with the right of the testator to dispose of his or her property by will. *See In re Estate of Chastain*, 401 S.W.3d at 619; *see also Epperson v. White*, 299 S.W. 812, 815 (Tenn. 1927). The power

---

retroactively." In the case at bar, the legislature made it clear that it intended for the 2016 amendment to apply retrospectively.

[4] Tenn. Code Ann. §§ 32-1-101 to - 202.

to dispose of property by will is not a natural or a constitutional right. *Epperson*, 299 S.W. at 815. The legislature has created this right and has provided the means by which an individual may exercise this right. *Id.*

Tenn. Code Ann. § 32-1-104, the statute at issue here, outlines the procedural requirements for the execution of an attested will. *In re Estate of Chastain*, 401 S.W.3d at 619. The legislature enacted these statutory formalities to prevent fraud or mistake and to ensure that the testator's property is distributed in accordance with the testator's wishes upon his or her death. *Id.*

To further ensure that the testator's plan for the distribution of his or her property is realized, the legislature has created a procedure by which a will is admitted to probate. *In re Estate of Boote*, 198 S.W.3d at 717. Such formalities preserve "the inviolability" and the "sanctity" of the testator's right. *In re Estate of Chastain*, 401 S.W.3d at 619 (quoting *Ball v. Miller*, 214 S.W.2d 446, 449 (Tenn. 1948)). This court explained:

> Proceedings to admit a will to probate are in rem proceedings. Their function is to provide the court with the information it needs to decide the proper distribution of the *res*, i.e., the estate. In making this determination, the court's polestar is the intent of the testator or testatrix. ***The proceedings are designed not to advance the interests of the living parties but rather to vindicate the right of the decedent to dispose of his or her property as he or she saw fit***.

*In re Estate of Boote*, 198 S.W.3d at 717 (internal citations omitted) (emphasis added).

As noted earlier, just a few months prior to the execution of Ms. Stewart's will, this court held that a will is invalid if the witnesses sign the self-proving affidavit without signing the body of the will. *In re Estate of Morris*, 2015 WL 557970, at *4. The legislature responded to the *Morris* decision by enacting Tenn. Code Ann. § 32-2-104(b), the purpose of which was to render valid those wills executed prior to July 1, 2016, that were executed in the same manner as the will in *Morris* and here. Thus, it is clear that the 2016 amendment to Tenn. Code Ann. § 32-2-104 was intended to provide relief for testators who believed they had executed a valid will prior to July 1, 2016, when the two witnesses duly executed the attestation affidavit at the same time as the will was executed by the testator, but the witnesses failed to sign the will itself. Therefore, we conclude that the enactment of the 2016 amendment to Tenn. Code Ann. § 32-2-104 was intended to advance the public policy of this state by vindicating the rights of testators to decide how their property should be distributed following their deaths.

Here, a retrospective application of the 2016 amendment to Ms. Stewart's will advances the public policy of this state because it vindicates her right to decide how her property should be distributed upon her death.

- 8 -

## B. Reasonable Expectations

By executing her 2015 will, Ms. Stewart had the reasonable expectation that the will would dispose of her property at death. Moreover, Ms. Stewart believed that she was adhering to the execution requirements set out in Tenn. Code Ann. § 32-1-104 and did not rely on a contrary state of the law. Thus, the 2016 amendment did not interfere with the reasonable expectations of the testator; in fact, it advanced her expectations. For his part, Mr. Stewart contends that, as an heir-at-law at the time of his daughter's death, he had the right to rely on the state of the law in effect at that time. Because his daughter died intestate in accordance with the law at the time of her death, Mr. Stewart claims he had a reasonable expectation as an heir-at-law to inherit from her estate.[5] We are not persuaded.

Mr. Stewart's right to inherit from his daughter was contingent upon whether she died intestate, partially intestate, or whether and to what extent he was a beneficiary under her will.[6] Whether a person died testate or intestate is a determination made by a court in a probate proceeding, and such a determination is often made weeks, if not months, after the decedent's death. *See In re Estate of Trigg*, 368 S.W.3d at 496-97. Thus, who inherits from a decedent's estate and what they inherit, if anything, is contingent on several factors. *Id.* It is for this and other reasons that the General Assembly enacted both substantive and procedural laws for the execution of wills and the administration of decedent's estates. *See* Tenn. Code Ann. §§ 30-1-101—30-5-105. Pursuant to these statutes, the probate proceeding

> provides the vehicle for identifying and collecting the decedent's property, paying the debts of the decedent and the estate in an orderly way, and distributing the remainder of the estate to those entitled to share in the estate either under the decedent's will or according to the laws of descent and distribution . . . . Commencing a probate proceeding gives interested parties the opportunity to contest the validity of the will offered for probate or to seek judicial construction of portions of a will that are ambiguous or uncertain.

*In re Estate of Trigg*, 368 S.W.3d. at 496 (footnotes and internal citations omitted).

---

[5] The word "estate" includes "both realty and personalty." *In re Estate of Trigg*, 368 S.W.3d 483, 501 (Tenn. 2012) (quoting *Haskins v. McCampbell*, 226 S.W.2d 88, 91 (Tenn. 1949)).

[6] "Where there is no residuary clause, property not specifically bequeathed in the will passes as if the deceased died intestate." *In re Estate of Jackson*, 793 S.W.2d 259, 260 (Tenn. Ct. App. 1990) (citing *Pinkerton v. Turman*, 268 S.W.2d 347 (Tenn. 1954)); *Bedford v. Bedford*, 274 S.W.2d 528 (Tenn. Ct. App. 1954).

In any probate proceeding there is a presumption against intestacy. *See In re Estate of McFarland*, 167 S.W.3d 299, 303 (Tenn. 2005). Consequently, once a will is admitted to probate, there is a presumption that the will is valid. *See Wall v. Millsaps*, 286 S.W.2d 343, 345 (Tenn. 1955) (When a will is probated, "it stands in effect until it is set aside under a proper proceeding, in the proper tribunal."). Thus, Mr. Stewart, as a contestant to the will, would have to overcome that presumption to inherit from his daughter's estate as an heir-at-law.

Furthermore, Tennessee Code Annotated § 31-2-103 provides that the personal property of a decedent, whether testate or intestate, vests in the executor or personal representative—not in the beneficiaries or heirs-at-law. Real property vests in the heirs-at-law if there is no will or in the devisees of the real property if there is a will.[7] Tenn. Code Ann. § 31-2-103. Because Ms. Stewart had a will, at her death, the personal property vested in the executor of her estate, and the real property vested in the devisees under the will, not in Mr. Stewart, the intestate heir.

Therefore, Mr. Stewart did not have a reasonable expectation that he would inherit from Ms. Stewart's estate on the date of her death. He did, however, have a reasonable expectation that he would have standing to contest Ms. Stewart's will. "Everyone who claims an interest in the decedent's estate has a right to become a party to the will contest." *In re Estate of Boote*, 198 S.W.3d at 713. The purpose of a will contest is to determine once and for all who is entitled to inherit the decedent's property, and the primary question to be decided is whether the decedent left a valid will.[8] *Id.* At Ms.

---

[7] Tenn. Code Ann. § 31-2-103 states:

The real property of an intestate decedent shall vest immediately upon death of the decedent in the heirs as provided in § 31-2-104. The real property of a testate decedent vests immediately upon death in the beneficiaries named in the will, unless the will contains a specific provision directing the real property to be administered as part of the estate subject to the control of the personal representative. Upon qualifying, the personal representative shall be vested with the personal property of the decedent for the purpose of first paying administration expenses, taxes, and funeral expenses and then for the payment of all other debts or obligations of the decedent as provided in § 30-2-317. If the decedent's personal property is insufficient for the discharge or payment of a decedent's obligations, the personal representative may utilize the decedent's real property in accordance with title 30, chapter 2, part 4. After payment of debts and charges against the estate, the personal representative shall distribute the personal property of an intestate decedent to the decedent's heirs as prescribed in § 31-2-104, and the property of a testate decedent to the distributees as prescribed in the decedent's will.

[8] Mr. Stewart argues that "Tennessee decisional law is clear that a legislative enactment after the testator's death cannot change how courts evaluate the testator's will. *Fell v. Rambo*, 36 S.W. 3d 837, 844-458[sic] (Tenn. Ct. App. 2002) (citing *Calhoun v. Campbell*, 763 S.W. 2d at 749; 4 William J. Bowe and Douglas H. Parker, Page on the Law of Wills §30, 27, 169 (1961))." Mr. Stewart is correct in that the

(continued…)

- 10 -

Stewart's death, Mr. Stewart had a reasonable expectation that he would be permitted to contest the validity of Ms. Stewart's will, and Tenn. Code Ann. § 32-1-104(b) has not interfered with that reasonable expectation.

Furthermore, the statute has not interfered with a long-held reliance on a contrary state of the law. Prior to the *Morris* decision, the law with respect to the validity of wills that only contained the witnesses' signatures on the attestation affidavit had not been decided. Thus, the law on this narrow issue was not well-established, and Mr. Stewart has not made a convincing argument that he had "long-relied on a contrary state of the law." *Doe*, 2 S.W.3d at 924.

## C. Procedural or Remedial Statute

We have determined that the 2016 amendment to Tenn. Code Ann. § 32-1-104 is a remedial statute that can be applied retrospectively without interfering with vested rights. Our decision is principally based on the reasoning in *Shields v. Clifton Hill Land Co.*, 28 S.W. 668 (Tenn. 1894), which is both illuminating and persuasive.

The issue in *Shields* was whether the corporate charter of the Clifton Hill Land Company was invalid because it was not acknowledged before the proper officer as required by the law in effect when the charter was signed by the incorporators. *Id.* at 673. The incorporators, whom the plaintiffs sought to hold personally liable for the debts of the Clifton Hill Land Company, conceded that their acknowledgments were defective when they executed the charter; nevertheless, they insisted the defect was cured, and the charter made valid, as a consequence of subsequent legislation that was intended to apply retrospectively. *Id.* Thus, like here, the issue was whether a subsequent statute could be retroactively applied to cure a defect in the manner in which a document was signed. Also like here, the plaintiffs insisted that the consequence of applying the subsequent statute retroactively would affect their vested rights. *Id.* at 674. The substance of their position was that

> because of the invalidity of the charter on the day the land was conveyed to the corporation, the defendants then became personally liable for the payment of the purchase–money notes; that such personal liability was a vested and fixed right of the vendors, which could not be taken away or impaired by legislative enactment, as would be the effect if the act in question be applied in this case. The constitutional provision upon which this contention is made is as follows: "That no retrospective law, or law

---

law at the time of the decedent's death governs construction. However, we are not construing the will to determine how the decedent wished to distribute her property. We are determining whether the will is *valid*.

- 11 -

impairing the obligation of contracts, shall be made." Const. Tenn. art. 1, §
20.

*Id*.

The *Shields* Court disagreed, noting the constitutional provision "does not mean
that absolutely no retrospective law shall be made, but only that no retrospective law
which impairs the obligation of contracts, or divests or impairs vested rights, shall be
made." *Id*. (citations omitted). The Court then outlined three circumstances where a
retrospective law would not interfere with vested rights.

First, the Court explained that, generally, remedial statutes that correct procedural
defects can be applied retrospectively without interfering with vested rights. *Id*. Such
statutes "go to confirm rights already existing . . . by curing defects, and adding to the
means of enforcing existing obligations." *Id*. The Court offered as an example, a "statute
to confirm former marriages defectively celebrated, or a sale of lands defectively made or
acknowledged." *Id*. Though these statutes may act, to some degree, upon existing rights,
they "have been held valid when clearly just and reasonable, and conducive to the general
welfare." *Id*.

Second, the *Shields* Court discussed circumstances where a court or its officers
"have failed to observe strictly the rules of procedure . . . and, in consequence thereof, a
party is . . . in a position to take advantage of the error. . . ." *Id*. The Court explained that
"it is not only just, but highly proper that the legislature shall interfere, and cure the
defect by validating the proceedings." *Id*. An individual "has no vested right in a rule of
law which would give him an inequitable advantage over another." *Id*. Such a law could
be applied retrospectively and still comport with the constitution. *Id*.

Third and finally, if the procedural flaw is something the legislature would have
dispensed with by prior statute, "then it is not beyond the power of the legislature to
dispense with it by subsequent statute." *Id*.

Applying the law to the facts in *Shields*, the Court concluded:

[The plaintiffs] had no vested right in the defect in the charter of the Clifton
Hill Land Company; hence the cure or removal of that defect did not divest
or impair any vested right of theirs. ***The right to sue the defendants***
***personally was not a vested right in legal contemplation. It was but a***
***consequential right, resulting from the disability of the corporation, and***
***not a right flowing from any contract with the individuals, as such.*** The
mutual intention was to bind the corporation, not the incorporators, for the
price of the land; and no vested right could arise contrary to that intention.

A law which facilitates the intention of the parties to a contract never impairs its obligations, or divests or impairs any vested right thereunder.

*Id.* at 675 (emphasis added).

The 2016 amendment at issue in this case parallels the circumstances discussed in *Shields* in all three respects. First, the 2016 amendment is not unlike the examples given in *Shields* of a remedial statute enacted to cure a procedural defect. It validates Ms. Stewart's will in the same way that a statute might validate marriages defectively celebrated. And, like the statute in *Shields*, the 2016 amendment facilitates the intentions and the expectations of the parties to the will at the time of its execution.

Second, like the plaintiffs in *Shields*, Mr. Stewart had no vested right in a law that would allow him to take advantage of a procedural defect. It was well within the province of the legislature to cure the defect to prevent Mr. Stewart, and others similarly situated, from gaining an unfair advantage based on a mere technicality. As the *Shields* Court held, such laws can be applied retrospectively without running afoul of Article I, § 20 of the Tennessee Constitution.

Third, the 2016 amendment is remedial in the sense that the General Assembly enacted the 2016 amendment in order to correct a deficiency in the law that resulted in a number of wills being declared invalid. Thus, the procedural flaw in the execution of Ms. Stewart's will is one that the legislature "might have dispensed with by prior statute." *Id.* at 674. Consequently, it is constitutionally permissible for the legislature to dispense with it by subsequent statute.

Considering the foregoing, Mr. Stewart did not have a vested right to inherit from Ms. Stewart's estate. He merely had what the *Shields* Court described as a "consequential right," resulting from a defect in the law that allowed him to take advantage of an alleged flaw in the execution of the will. *See id.* at 675. The Court explained that a law that "facilitates the intention of the parties to a contract never . . . impairs any vested right thereunder." *Id.*

Similarly, a law which facilitates the intentions of the testator cannot impede any vested right of an heir-at-law. Ms. Stewart intended for her property to be distributed to those beneficiaries named in the will. The Execution of Wills Act focuses first and foremost on the right of the testator to dispose of his or her property by will and not the right of potential heirs-at-law to receive that property. In other words, the right of an heir-at-law to inherit property is merely contingent upon whether the testator has properly exercised his or her right to make a will. A law that vindicates the primary right cannot possibly interfere with a contingent right.

The term "vested right" is a right "that is absolute, complete and unconditional to the exercise of which no obstacle exists and which is immediate and perfect in itself and not dependent on a contingency." *In re Estate of Jenkins*, 97 S.W.3d 126, 132 (Tenn. Ct. App. 2002) (quoting *Calhoun v. Union Planter's Nat'l Bank*, R.D., No. 90986-3, 1987 WL 13834, at *7 (Tenn. Ct. App. Jul. 16, 1987) (reversed in *Calhoun v. Campbell*, 763 S.W.2d 744 (Tenn. 1988) on grounds irrelevant to this quotation)). Unlike the facts in *Stewart*, 215 S.W.3d at 826, Mr. Stewart did not have a vested right to inherit under his daughter's will.[9] Upon Ms. Stewart's death, Mr. Stewart's rights of inheritance remained contingent and uncertain until a court could determine if Ms. Stewart properly exercised her right to make a will.

Because the retrospective application of the 2016 amendment does not impair any of Mr. Stewart's vested rights, it may be applied retrospectively. Applying the 2016 amendment retrospectively renders the decedent's 2015 will valid. Therefore, the judgment of the trial court is reversed, and this case is remanded for further proceedings consistent with this opinion.

## IN CONCLUSION

The judgment of the trial court is reversed, and this matter is remanded for further proceedings consistent with this opinion. Costs of appeal are assessed against the appellee, Derwood Stewart.

_____
FRANK G. CLEMENT JR., P.J., M.S.

---

[9] In *Stewart*, 215 S.W.3d at 826, the dispositive issue was which beneficiaries inherited pursuant to Clara Stewart's will, as distinguished from the issue here, which is whether the decedent's attested will was executed in compliance with the Tennessee Execution of Wills Act.