IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 17, 2023 Session

## IN RE ESTATE OF ADAM RANDALL WILSON

**Appeal from the Circuit Court for Madison County**
**No. C-22-187        Kyle C. Atkins, Judge**

_____

**No. W2023-00313-COA-R3-CV**

_____

This appeal arises from a will contest. The circuit court entered summary judgment upholding the will, finding no genuine issue of material fact existed as to its validity. The contestant appeals. We affirm and remand to the probate court for further probate proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY W. ARMSTRONG, J., joined.

Dale Wilson, LaPush, Washington, pro se.

Charles C. Exum and Christina D. McConnell, Jackson, Tennessee, for the appellees, Nancy McHaney and Jack Holmes, Co-Personal Representatives of the Estate of Adam Randall Wilson.

## OPINION

### I.  FACTS & PROCEDURAL HISTORY

Adam Randall Wilson died on March 9, 2022, at the age of 38. Adam was unmarried and had no children, and his mother had died a few years earlier. On April 4, 2022, Adam's father, Dale Wilson, a resident of Washington, filed a petition for intestate estate administration in the probate court of Madison County, Tennessee, where Adam resided.[1] In the petition, Dale asserted that he was Adam's only surviving heir and that

---

[1] Because some parties share the same last name, we will refer to them by their first names. We

after a diligent search he believed Adam did not leave a will. Dale sought to be named personal representative of Adam's estate. The following day, the probate court entered an order granting letters of administration to Dale on the basis that it appeared Adam did not leave a will. Dale's counsel was then granted permission to withdraw.

Less than a week later, a counter-petition for probate of a will and granting letters of administration was jointly filed by Jack Holmes, a local attorney, and Nancy McHaney, a "family friend" of Adam. They alleged that Adam had in fact left a will that was duly signed and attested a decade earlier, on July 18, 2011, with two subscribing witnesses. The counter-petition alleged that a copy of the will had been provided to Dale before he filed his petition for intestate administration. According to the counter-petition, the sole surviving beneficiary under Adam's will was his maternal grandmother. The counter-petition stated that the will also appointed Adam's grandmother as personal representative of the estate, but she had declined to serve pursuant to an attached declination.[2] The counter-petition stated that Attorney Holmes and Ms. McHaney were willing to serve as personal representatives of the estate. Thus, they asked the probate court to admit the will to probate, revoke the letters of administration issued to Dale, and issue letters of administration to them.

The probate court vacated the order appointing Dale as administrator of the estate and revoked his letters of administration. It also admitted the will to probate based on the affidavits of the subscribing witnesses, finding that the will "was properly signed by the Decedent and witnessed by Mary Willis and Michelle Mysinger, who each signed an affidavit and attestation clause pursuant to Tennessee Code Annotated Section 32-2-110." The probate court appointed Attorney Holmes and Ms. McHaney as co-personal representatives.

Thereafter, Dale filed a "Verified Complaint and Notice to Contest Last Will and Testament of Adam Wilson." He asserted that he had standing to contest the will as Adam's next of kin, who would be the sole heir of his estate if he died intestate. Dale claimed that several individuals had searched Adam's home for days after his death and did not find a will, but Ms. McHaney found a will later. Dale contended that the will was "fraudulently constructed and the signature of thereon [sic] is forged," and therefore, he was contesting the will "based on Fraud [and] Forgery." Dale's complaint stated that he elected the circuit court of Madison County to hear the will contest.

The probate court entered an order finding that Dale had standing to contest the will

---

intend no disrespect. Further, although Dale is proceeding pro se in this appeal, he was represented by counsel when he filed the petition for administration.

[2] The will provided that Adam left his entire estate to his mother, but if she predeceased him, then to his grandparents. Adam's mother and grandfather had predeceased him, so the only remaining beneficiary was his grandmother. Adam's mother was likewise named as the executrix of the will, as she was an attorney, but in the event that she predeceased him, he designated his grandmother.

and certifying the will contest to the circuit court.[3]  The will was filed in the record as well. The will itself consisted of three typewritten pages, and the third page included an attestation clause with the names and addresses of two witnesses handwritten beneath it. The three-page will was followed by two one-page documents, each entitled, "Affidavit of Witnesses to Prove Will."  Each affidavit stated that it was made in accordance with Tennessee Code Annotated section 32-2-110, that Adam had signed the will in each witness's sight and presence, and that each witness had signed the will at the instance and request of Adam and in his presence and in the presence of each other.  Each witness had signed such an affidavit.

In circuit court, Dale filed an amended complaint contesting the will.  He repeated his allegation that Adam's home was thoroughly searched after his death and that Ms. McHaney had "mysteriously" found a will thereafter.  Thus, he alleged that the will was "fraudulently constructed and the signature is forged."  Dale alleged that Ms. McHaney was "the originator of the fraudulent will and forged signature."  He contended that Adam's grandmother was "approaching 90 years of age" and lacked capacity to designate anyone as personal representative, and he suggested that Ms. McHaney was "self-appointedly handling [the grandmother's] affairs without legal authority" and exerting undue influence over her.  He suggested that Adam's grandmother needed a guardian ad litem.  He also contended that Attorney Holmes had served as the executor of the estate of Adam's mother and alleged that money may still be owed in connection with it.  In conclusion, Dale asked the circuit court to declare the will void "as it is fraudulent and the signature is a forgery." However, he also sought various relief with respect to the co-personal representatives of the estate, including their dismissal for cause, a formal accounting, setting aside any

---

[3] Tennessee Code Annotated section 32-4-101 provides, in relevant part:

(a) If the validity of any last will or testament, written or nuncupative, is contested, then the court having probate jurisdiction over that last will or testament must enter an order sustaining or denying the contestant's right to contest the will. If the right to contest the will is sustained, then the court must:
. . .
(2) Cause a certificate of the contest and the original will to be filed with the appropriate court for trial.
(b) As used in this section, the term "the appropriate court for trial" means the court elected by the contestant, in the notice of contest, to conduct a trial upon the validity of the will.

Tennessee Code Annotated section 32-4-109 further provides:

Any court of record that has probate jurisdiction, whether a chancery court or other court of record established by private or public act, has concurrent jurisdiction with the circuit court to conduct a trial upon the validity of a will, in the manner and to the extent prescribed in this chapter. Notwithstanding law to the contrary, prior to certification of the fact of the contest pursuant to § 32-4-101(a)(2), the contestant shall elect, in the notice of contest, either the circuit court or the chancery court, or other court of record having such concurrent jurisdiction, to conduct a trial upon the validity of the will.

transfers made by them thus far, and reinstatement of himself as personal representative. Ms. McHaney and Attorney Holmes, in their capacity as Co-Personal Representatives of the Estate, filed an answer and motion to strike. The Estate asserted that the sole issue to be determined in a will contest is whether the will is valid, and Dale's additional allegations and prayers for relief were "immaterial and impertinent to the sole issue of the validity of the will."

On September 7, 2022, the Estate filed a motion for summary judgment. The Estate asserted that the "general requirements for a valid will in Tennessee" are a written document signed by the testator and signed by two disinterested witnesses who were in the presence of the testator when he signed and who also signed in the presence of the testator. Thus, the Estate argued that the will "was executed in accordance with the laws of Tennessee" and that Dale had only challenged the validity of Adam's signature on the basis that it was a forgery. The Estate submitted several affidavits in support of its motion for summary judgment, along with a statement of undisputed material facts. The first affidavit was from Attorney Holmes, who stated that his law firm, the Law Offices of Holmes, Rich and Sigler, P.C., had prepared Adam's will around July 2011. The second affidavit was from Marcie Willis, one of the witnesses who had signed an affidavit that accompanied the will. Ms. Willis stated that she worked as a paralegal at the law firm and drafted Adam's will under the supervision of his mother, Randi Rich, who was an attorney at the same firm. Ms. Willis stated that Adam came into the law office on July 18, 2011, to sign his will. She stated that she and the second witness, Michelle Mysinger, witnessed Adam signing the will. Ms. Willis also stated that she witnessed Ms. Mysinger sign the will as a witness. She also stated that the document introduced by the Estate as Adam's will "is the document I drafted and witnessed [Adam] sign on July 18, 2011." The next affidavit was from Michelle Mysinger. She stated that she had worked at the same law office during the period in question as a title searcher. Ms. Mysinger stated that Adam came into the law office on July 18, 2011, to sign the will, and she, alongside Ms. Willis, witnessed Adam signing the will. Ms. Mysinger stated that she also witnessed Ms. Willis sign the will as a witness, and she said the document introduced by the Estate is the same document she witnessed Adam sign on July 18, 2011. Finally, the Estate submitted an affidavit of a notary public, who stated that Adam came into the law office on July 18, 2011, to sign his will, she witnessed Adam signing the will, and she witnessed Ms. Willis and Ms. Mysinger sign as witnesses. The notary also stated that the will introduced by the Estate is the same one she witnessed Adam sign on July 18, 2011. In light of these affidavits, the Estate argued that no genuine issue of material fact existed as to the authenticity of Adam's signature or the validity of the will. Thus, the Estate asked the circuit court to dismiss the will contest.

Proceeding pro se, Dale filed a host of motions in circuit court with respect to matters pending before the circuit court and matters related to the probate proceeding, including a "Motion for Production," a motion to appoint a guardian ad litem for Adam's grandmother, a notice of intent to depose witnesses, a motion to void the will, and a motion to amend an agreed scheduling order. Just days before the hearing on the motion for

summary judgment, Dale filed a response to the motion for summary judgment. He insisted that the will, although dated 2011, was fabricated after Adam's death in 2022 by copying Adam's more recent signature style on the document. In support of this theory, Dale relied on an attached affidavit from a forensic document examiner. In the attached affidavit, the forensic document examiner stated that he had examined a copy and photographs of Adam's will in addition to originals and copies of 25 "purported known signatures of Adam" for comparison purposes. The examiner stated that some of the stylistic features were "more in line with the writing style depicted within the 2022 signatures" rather than the examples from 2009 to 2018. He said, based on his examinations to date, there were "indications" the signature on the will was not written by Adam and was inconsistent with the signature style of signatures around 2011, but examining the original will "would provide for an assessment of the original inked signatures and factors which may yield information on the relative date the Will was prepared." In conclusion, he opined that the signature on the will "may" be a simulation of Adam's signature created using a recent signature as a model, but providing more comparisons "may provide the basis for a more definitive finding." Thus, Dale argued that by the time of trial he would be able to prove that Adam's signature was not genuine, if he was permitted to engage "professional ink-aging experts." In addition, Dale challenged the will in relation to the requirements for the two witnesses, contending that they "did not state on the Will that they actually witnessed each other witnessing the decedent signing[.]" He also argued that the witnesses did not sign the will itself because their names, although in handwriting, were printed rather than signed in cursive and "in the same handwriting; not their own." Finally, Dale contended that his efforts to compile a "more complete" record had been stymied by the court clerk's office due to a delay in the issuance of subpoenas and difficulties he encountered when photographing the will, making summary judgment "premature." He asserted that with more time he would be able to prove that the will was a fraud and forgery. The affidavit of the forensic document examiner that was attached to Dale's response to the motion for summary judgment referred to various attachments, but no documents were attached to the affidavit as required by Tennessee Rule of Civil Procedure 56.06.[4] In addition, Dale failed to respond to the statement of undisputed material facts submitted by the Estate as required by Tennessee Rule of Civil Procedure 56.03.

The hearing on the motion for summary judgment was held on November 10, 2022. The Estate argued that the affidavits it submitted in support of the motion for summary judgment established that the will was duly executed and gave rise to a presumption that the will was valid. The Estate argued that Dale had failed to establish any genuine issue of material fact as to the will's validity, as his response was late-filed, he did not respond to the statement of undisputed material facts, the documents relied on by the expert were not attached to his affidavit, and it merely stated that the signature on the will "may" be a

---

[4] Tennessee Rule of Civil Procedure 56.06 provides that "[s]worn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith."

simulation. The Estate also noted that many of the issues Dale raised pertained to matters in probate court. Dale maintained that with additional time to obtain more material for the document examiner, and engage an ink-aging expert, he could prove Adam's signature was forged.

The trial judge explained that there was only one issue before the court in a will contest, regarding the validity of the will, so Dale's arguments regarding the probate proceedings and the co-personal representatives were not before him. As for the validity of the will, the trial judge noted that Dale's response to the motion for summary judgment was filed late and that he could decline to consider it. However, he explained that even considering the response and affidavit, it did not demonstrate a genuine issue of material fact that could lead a rational trier of fact to find in Dale's favor. He pointed out that Dale failed to respond to the Estate's statement of undisputed material facts, and therefore, those were deemed admitted. He explained that those undisputed material facts addressed the will's preparation and execution and showed that it was witnessed by the notary and two individuals who signed the attached pages. He noted that the two witnesses both indicated, when they attested and again in their affidavits, that this was Adam's signature and that he did in fact sign the will. Although Dale argued that the witness signatures were "penciled in and . . . not in cursive," the trial judge found "nothing wrong with the way that was done," observing that "on the will they just printed the name of the witnesses and attached the attestation clause to that."

The trial court entered a written order incorporating the transcript by reference and also including written findings and conclusions. The order recited the following facts, from the statement of undisputed material facts, which were deemed "undisputed" by the court: Adam died on March 9, 2022; prior to his death the Law Offices of Holmes, Rich and Sigler drafted a will for him; the will prepared by the law office and purported to be Adam's will has an execution date of July 18, 2011; Ms. Mysinger and Ms. Willis witnessed Adam signing the will introduced by Attorney Holmes and Ms. McHaney in this litigation; it was notarized; Adam was of sound mind while signing the will; and the sole beneficiary of the will is Adam's grandmother. In light of these undisputed facts, the circuit court found no genuine issue of material fact as to the validity of the will. The trial court found that the affidavit of the document examiner did not comply with Tennessee Rule of Civil Procedure 56.06 and that it failed to refute the facts in the record. Therefore, the circuit court declared the will valid and dismissed the will contest.

Within thirty days of the entry of the order, Dale filed a "Motion for Reconsideration Upon Familiarization With the Pleadings." He asked the court to reconsider its ruling dismissing the will contest on the basis that "his pleadings were somehow kept from the court's purview and consideration and [the] court's decision was made on incorrect information provided by the defense." Dale contended that the trial judge "never saw" his various additional pleadings that had been filed in circuit court and that they were not considered at the hearing on the motion for summary judgment. He argued that the court

- 6 -

clerk's office had thwarted his efforts to prosecute his case and failed to make his motions available to the court. Regarding the validity of the will, he argued that the witness signatures were not on the will itself but "just stapled to it." Dale also attached numerous documents to the motion to reconsider, which appear to be various types of documents that contained Adam's signature.

The Estate filed a response to the motion to reconsider, arguing that to the extent the motion could be deemed one to alter or amend, Dale was only offering documentation that was available to him at the time of the summary judgment proceeding. The Estate contended that the witnesses' handwritten names were effective as signatures even if they were not in cursive, and in any event, their cursive signatures appeared on the affidavits that followed. Dale then filed a lengthy volume of compiled documents, including motions he had filed, transcripts, emails, affidavits, and other items. Dale also filed a "Motion to Void Attestation Statements of Alleged Witnesses As Used in Lieu of Signatures on Alleged Will As They Are Not Written Upon nor Attached to The Alleged Will as Required by TCA 32-2-110." Therein, Dale argued, among other things, that the affidavits of the witnesses were not "attached" to the will as required by Tennessee Code Annotated section 32-2-110. According to Dale, this rendered them void.

At the hearing on the motion to reconsider, the trial judge explained that there were various motions filed by Dale in the case file, but Dale had not noticed them for hearings. He directed Dale to review the local rules regarding setting matters for hearings.[5] Dale complained that no one provided him a copy of the local rules, but the trial judge explained that they were "on the website and readily available." Dale asked if he could call the trial judge's assistant as a witness to question her about what they had discussed, as he "was trying to notice them for hearing when I was talking to her." The trial judge declined this request. Dale conceded that he did not *send* any notice of hearing, as he was admittedly "ignorant of the rules." The trial judge stated that he had been patient and liberal with Dale as a pro se litigant but that he could not do his job for him.

The trial judge also reiterated that his only task in this will contest was to determine whether or not the will was valid. He explained that the various other issues Dale attempted to argue were matters for the probate court, which could be raised in probate court at the conclusion of the will contest. Although Dale insisted that the trial judge had simply dismissed the case without remanding it, the trial judge explained that the case would return

---

[5] The trial judge read aloud Rule 19 of the Local Rules of Practice for the Twenty-Sixth Judicial District, which provides:

> The attorney who files the motion has the burden to make application for a hearing at the next available motion day or as soon thereafter as practicable. Failure to comply with this Rule shall be construed by the Court as abandonment of the motion. When a motion is set for a hearing, the Judge who will hear the motion shall be provided by the attorney who filed the motion with a courtesy copy of the motion and all supporting materials.

to probate court, for administration, after the circuit court resolved the limited issue regarding the validity of the will. Regarding the merits of that limited issue, the trial judge explained that he had considered the affidavit of the forensic document examiner and determined that the affidavit did not say that the will was a forgery; rather, it said that further investigation was needed. The trial judge explained that this was simply not enough to overcome the proof submitted along with the Estate's motion for summary judgment and create a jury question as to the validity of the will. The trial judge also announced that he was not going to "reconsider" his conclusion based on the unauthenticated signatures Dale had attached to his motion, as this was not newly discovered evidence. Dale asked if he could call as a witness an individual from the court clerk's office who had "stalled" him, but the judge declined. He explained that he had considered everything in the file at the time of the summary judgment hearing, which indicated that the will was valid. As for Dale's argument regarding whether the witness affidavits were "attached" to the will itself, the trial judge asked Dale whether he brought that matter to his attention at the summary judgment hearing. Dale conceded that he did not, stating that this was "newly discovered." The trial judge again concluded that this was "not something new," as the will had been in the court file since the will contest was filed.

The circuit court subsequently entered a written order denying the motion to reconsider, stating that the asserted "new evidence" was available at the time of the hearing on the motion for summary judgment, and thus, the motion was not well taken. Dale then filed a notice of appeal. The trial judge entered an order denying the other motions filed by Dale as moot.

## II. ISSUES PRESENTED

Dale presents the following issues for review, which we quote from his pro se brief on appeal:

1.  Whether Court erred in ruling Will Construction meets Statute Requirements;
2.  Whether court erred in using non-conforming, unattached attestation statements to prove Will;
3.  Whether Probate Court had jurisdiction to accept Challenged Will into probate *in solemn* form without notice to Known Opposition after notice of intent to challenge will;
4.  Whether Court Erred in dismissing Affidavit of Handwriting Expert[;]
5.  Whether Court erred in refusing to allow Plaintiff to call witnesses, present evidence;
6.  Whether court erred in dismissing case without reading and ruling on the pleadings filed in the case[.]

In its posture as appellee, the Estate frames the following issues for review on appeal:

1.  Whether the Statement of Issues presented by Appellant for review are properly before this Court;
2.  Whether the Trial Court appropriately ruled for the Estate of Adam Randall Wilson in granting its Motion for Summary Judgment whereby Mr. Wilson failed to timely file a response to the Estate's Motion for Summary Judgment, failed to demonstrate a genuine dispute of material fact, and offered a defective affidavit in support of his position when the affidavit failed to comply with the Rules of Civil Procedure.
3.  Whether the Trial Court acted within its broad discretion in denying Mr. Wilson's Motion for Reconsideration Upon Familiarization With the Pleadings when Mr. Wilson failed to present any "new evidence" that would warrant reconsideration of the grant of summary judgment.

For the following reasons, we affirm the decision of the circuit court and remand to the probate court for further probate proceedings.

### III. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. We review a trial court's decision on a motion for summary judgment de novo with no presumption of correctness. *Lemon v. Williamson Cty. Sch.*, 618 S.W.3d 1, 12 (Tenn. 2021) (citing *Tatham v. Bridgestone Ams. Holding, Inc.*, 473 S.W.3d 734, 748 (Tenn. 2015)). "The moving party has the ultimate burden of persuading the court that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 83 (Tenn. 2008) (citing *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)). However, "'[t]he evidence must be viewed in a light most favorable to the claims of the nonmoving party, with all reasonable inferences drawn in favor of those claims.'" *Cotten v. Wilson*, 576 S.W.3d 626, 637 (Tenn. 2019) (quoting *Rye v. Women's Care Ctr. Of Memphis, MPLLC*, 477 S.W.3d 235, 286 (Tenn. 2015)). "If the undisputed facts support only one conclusion and that conclusion entitles the moving party to a judgment, then the trial court's grant of summary judgment is affirmed." *In re Est. of Cone*, 652 S.W.3d 822, 826 (Tenn. Ct. App. 2022).

### IV. DISCUSSION

At the outset, we note the Estate's argument that some of the issues presented on appeal by Dale are not properly before this Court. First, the Estate argues that Dale's third issue, pertaining to the probate court, "has never been raised in any proceeding until this

appeal" and should not be considered. Next, the Estate argues that Dale's first two issues should not be considered either because they were not raised in the amended complaint he filed in circuit court. Thus, it is helpful to briefly review the nature of a will contest in order to determine the issues that are properly before this Court on appeal.

### A.    Will Contests Generally

"The procedures governing the probate and contest of wills originally derived from the ecclesiastical courts of England but are now governed by statute." *In re Est. of Brock*, 536 S.W.3d 409, 414 (Tenn. 2017) (citing *Petty v. Call*, 599 S.W.2d 791, 793 (Tenn. 1980)). As such, we begin with a review of the relevant statutes. As noted above, "[i]f the validity of any last will or testament . . . is contested, then the court having probate jurisdiction over that last will or testament must enter an order sustaining or denying the contestant's right to contest the will," and if the right to contest is sustained, the court must "[c]ause a certificate of the contest and the original will to be filed with the appropriate court for trial." Tenn. Code Ann. § 32-4-101(a)(2). Tennessee Code Annotated section 32-4-104 further provides, "After the filing of the certificate of the contest and the original will, in the office of the clerk of the appropriate court for trial, pursuant to § 32-4-101(a)(2), an issue or issues shall be made up, under the direction of the court, to try the validity of the will." "Upon the trial of the issue in case of a written will with witnesses, it shall be proved by all the living witnesses, if to be found, and by such other persons as may be produced to support it." Tenn. Code Ann. § 32-4-105(a). "The issue may be tried by a jury, and their verdict, and the judgment of the court upon the validity of the will shall be certified to the court having probate jurisdiction over the will to be recorded together with the original will, if established." Tenn. Code Ann. § 32-4-107(a). Thus, "[w]hen the contest has been decided by the circuit court, the results are certified back to the Probate Court for further proceedings in the estate." *In re Est. of McCord*, 661 S.W.2d 890, 892 (Tenn. Ct. App. 1983). "The effect of a verdict and judgment in favor of the will is to revive in full force the former probate, which was suspended during the contest." 1 Jack W. Robinson, Sr., et al., *Pritchard on Wills and Administration of Estates* § 399 (7th ed. 2009) (hereinafter *Pritchard on Wills*).

"The purpose of a will contest proceeding, traditionally known as *devisavit vel non*, or 'Did he make a will or not?' is to determine the validity of a will." *In re Est. of Sutton*, No. E2013-00245-COA-R3-CV, 2013 WL 6669385, at *6 (Tenn. Ct. App. Dec. 17, 2013) *perm. app. denied* (Tenn. May 15, 2014). Notably, however, "the proceeding in the circuit court on the issue of devisavit vel non after the case is certified from the probate court to the circuit court is in substance an original proceeding to probate the will, separate and distinct from any proceedings held in probate court." *Cooper v. Austin*, 837 S.W.2d 606, 610 (Tenn. Ct. App. 1992) (citing *Bearman v. Camatsos*, 215 Tenn. 231, 385 S.W.2d 91 (1964); *Arnold v. Marcom*, 49 Tenn. App. 161, 352 S.W.2d 936 (1961)). The form of action is sui generis. *Arnold*, 352 S.W.2d at 939. A will contest is "a proceeding in rem, involving the distribution of the res, the estate," and "[t]he proceedings do not depend on

or refer to parties as did the proceedings in the common law courts; in a sense all the world are parties." *In re Est. of Barnhill*, 62 S.W.3d 139, 144 (Tenn. 2001) (quotations omitted). At the same time, "a will contest is only intended to test the external validity of a will." *Stacks v. Saunders*, 812 S.W.2d 587, 590 (Tenn. Ct. App. 1990) (citing *Rogers v. Russell*, 733 S.W.2d 79 (Tenn. Ct. App. 1986)). "The court's jurisdiction is limited to determining the validity of the decedent's will or whether the instrument offered for probate is actually the last will and testament of the decedent." *Id.* at 591 (citing *Rogers*, 733 S.W.2d at 84). The trial court does not have "the jurisdiction to entertain extraneous issues," and a will contest "'should not be obscured by issues that are not within the court's jurisdiction to decide.'" *Id.* (quoting *Rogers*, 733 S.W.2d at 85). In *Stacks*, for instance, we explained that "a tort action or actionable fraud could not have been litigated or injected as an issue in the former will contest because it would be a collateral or extraneous matter." 812 S.W.2d at 591. *See also Duncan v. DeMoss*, 880 S.W.2d 388, 389 (Tenn. Ct. App. 1994) (noting that a counterclaim regarding transactions with the deceased "had no place in a will contest suit in Circuit Court" and should have been stricken).

"Due to their unique nature, courts use presumptions to shift the burden of proof in will contest proceedings." *In re Est. of Link*, 542 S.W.3d 438, 451 (Tenn. Ct. App. 2017). When a will contest is filed, "[t]he proponents of the will have the initial burden of proving that the will was duly executed."[6] *In re Est. of Eden*, 99 S.W.3d 82, 88 (Tenn. Ct. App. 1995). "When the contested will is a written document with subscribing witnesses, it must be proved by all living witnesses, 'if to be found.'" *In re Est. of Link*, 542 S.W.3d at 452 (quoting Tenn. Code Ann. § 32-4-105). "Proof of due execution makes out a prima facie case of the will's validity," and "the burden of proof then shifts to the contestant to prove the will is invalid for some reason."[7] *In re Est. of Eden*, 99 S.W.3d at 88. As in other civil

---

[6] This Court has explained:

> In establishing the facts essential to the validity of the will by a preponderance of the evidence, proponents are, however, not obliged in all cases to prove each fact by direct evidence; but they may rely upon presumptions. There is, at the outset, no presumption that the alleged testator executed the will in question or any will; but when a paper propounded as a will is shown to have been signed by the alleged testator and the requisite number of witnesses, *in the absence of any satisfactory evidence to the contrary* the presumption is that all the formalities have been complied with.

*In re Est. of Guy*, No. M2001-02644-COA-R3-CV, 2002 WL 31890908, at *4 (Tenn. Ct. App. Dec. 31, 2002) (quoting *Cooper*, 837 S.W.2d at 612); *see also Pritchard on Wills* § 202.

[7] To list some examples:

> [A] will may be contested upon the ground that it was not duly executed, which objection may include failure to observe the statutory formalities of execution, alterations or additions after execution, or forgery of the instrument. The contest may also be based upon the grounds that the testator lacked testamentary capacity, that undue influence or fraud were practiced upon him, or that he was laboring under a mistake of the sort which invalidates the instrument. A will may be contested upon the ground that it has been

- 11 -

cases, a will contest can be disposed of by a Rule 56 motion for summary judgment. *Owen v. Stanley*, 739 S.W.2d 782, 785-86 (Tenn. Ct. App. 1987), *overruled on other grounds by Matlock v. Simpson*, 902 S.W.2d 384 (Tenn. 1995); *see also In re Est. of Phillips*, No. E2004-00116-COA-R3-CV, 2004 WL 2086331, at *2 (Tenn. Ct. App. Sept. 20, 2004); *In re Est. of King*, No. E2002-01745-COA-R3-CV, 2003 WL 21946723, at *1-2 (Tenn. Ct. App. Aug. 11, 2003); *Moore v. Green*, No. M2000-03203-COA-R3-CV, 2004 WL 547008, at *1 (Tenn. Ct. App. Mar. 18, 2004). "[W]here there is no genuine issue as to any material fact summary judgment under Rule 56 is appropriate in a will contest proceeding." *Union Planters Nat. Bank of Memphis v. Inman*, 588 S.W.2d 757, 760 (Tenn. Ct. App. 1979).

### B.    Dale's Issue on Appeal Regarding Probate Court

Keeping these principles in mind, we now examine Dale's third issue on appeal. He questions "[w]hether [the] Probate Court had jurisdiction to accept Challenged Will into probate in solemn form without notice to Known Opposition after notice of intent to challenge will."[8]  In the section of his brief addressing this issue, Dale challenges various

---

> revoked.  The objection that the instrument was not intended as a will and did not possess testamentary character can likewise be ground of contest.

*Rogers*, 733 S.W.2d at 84 (quoting T. Atkinson, *Handbook on the Law of Wills* § 98, at 517 (2d ed. 1953)). If forgery is alleged, and "'the physical condition of the paper offered for probate is such as to excite suspicion,' the burden remains on the proponent [of the will] to dispel the suspicious circumstances surrounding its execution." *In re Est. of Link*, 542 S.W.3d at 459 (quoting *Haynes v. Mullins*, 30 Tenn. App. 615, 209 S.W.2d 278, 279 (1947)).  However, in the absence of features that "excite suspicion" that the will was forged or altered, the contestants have the burden of establishing that the signature on the will was a forgery. *Id.* at 459-60.

[8] Because Dale's issue refers to proceedings in solemn form, to avoid any confusion, we do note that the probate proceeding was in common form.  We have explained the difference as follows:

> Probate in common form is an extremely informal procedure. *McClure v. Wade*, 34 Tenn. App. 154, 173, 235 S.W.2d 835, 843 (1950); 1 PRITCHARD § 331, at 511-12.  There is no requirement that interested parties be given notice of the proceedings, Tenn. Code Ann. § 30-1-117(b); *Reaves v. Hager*, 101 Tenn. 712, 720, 50 S.W. 760, 762 (1899); *In re Estate of Powers*, 767 S.W.2d 659, 660 (Tenn. Ct. App. 1988); 1 PRITCHARD § 331, at 511, and a judicial hearing is not required to have the will admitted to probate, Tenn. Code Ann. § 16-16-201(b); 3 PAGE ON WILLS § 26.110, at 292.
>
> The clerk and master of the chancery court is statutorily authorized to probate wills in common form.  Tenn. Code Ann. § 16-16-201(b).  Thus, in many cases, the will can be admitted to probate in common form on the same day that the petition is filed.  The clerk and master of the chancery court simply reviews the petition for completeness, collects the required fees, and enters an order admitting the will to probate in common form.  After taking a bond and administering the appropriate oath or affirmation, the clerk and master issues letters testamentary to the person nominated by the testator or testatrix to serve as the executrix or executor for the estate. Tenn. Code Ann. §§ 30-1-111 (2001), 30-1-201(a)(2) (2001); 1 PRITCHARD § 36, at 58-59; 2 PRITCHARD §§ 595, at 108-09, 596, at 109-10, 601, at 113.

actions taken by the probate court. However, this is an appeal from the will contest in circuit court. Will contest proceedings in circuit court are original and not appellate. *Jones v. Witherspoon*, 187 S.W.2d 788, 791 (Tenn. 1945); *Winters v. Am. Tr. Co.*, 14 S.W.2d 740, 742 (Tenn. 1929). Again, "'the proceeding in the circuit court on the issue of devisavit vel non after the case is certified from the probate court to the circuit court . . . is in substance an original proceeding to probate the will, separate and distinct from any proceedings held in the probate court." *In re Est. of Seeber*, No. E2022-01476-COA-R3-CV, 2023 WL 6297496, at *5 (Tenn. Ct. App. Sept. 27, 2023) (quoting *Cooper*, 837 S.W.2d at 610). As a result, "'it has long been held in this state that the *right* of a contestant to resist the probate of a will is a preliminary matter and presents a separate and distinct issue from the issue of devisavit vel non, and that the order of the probate court sustaining or denying the right to contest the will is an appealable order.'" *Id.* at *4 (quoting *Cooper*, 837 S.W.2d at 610) (emphasis added). Thus, in *In re Estate of Seeber*, which was an appeal from probate court, we explained that "the fact that the circuit court has not yet ruled on the issue of *devisavit vel non* has no impact on this Court's subject matter jurisdiction over this appeal." *Id.* at *5. The two proceedings were "separate and distinct." *Id. See also Weaver v. Hughes*, 173 S.W.2d 159, 160-61 (Tenn. Ct. App. 1943) (noting the contestants' argument that the appointment of the administratrix was void so she had no right to offer the will for probate but explaining that "her appointment as administratrix is not open to collateral attack in this [will contest] proceeding").

Because Dale's third issue pertains to actions taken by the probate court in a separate and distinct proceeding, we agree with the Estate that his issue is not properly before this Court in this appeal from the will contest in circuit court.

### C. Dale's Issues on Appeal Regarding the Witnesses

We now consider the Estate's argument that Dale's first and second issues are not properly before this Court. Dale's first issue is "[w]hether [the] Court erred in ruling Will Construction meets Statute Requirements," but, more specifically, he argues that the witness affidavits did not meet the requirements of Tennessee Code Annotated section 32-2-110. His second issue is "[w]hether [the] court erred in using non-conforming, unattached attestation statements to prove [the] Will," which likewise challenges the witness affidavits. Dale combines his discussion of these two issues in his brief on appeal.

---

*In re Estate of Boote*, 198 S.W.3d 699, 711-12 (Tenn. Ct. App. 2005). By comparison, "[p]robate in solemn form is a much more formal affair," as it includes notice to all interested parties, a judicial hearing, and entry of an order accepting or rejecting the will for probate in solemn form. *Id.* at 712. "[O]nce an order admitting a will to probate in solemn form has been entered, the will cannot be challenged in a later will contest." *Id.* at 713 (citations omitted). However, "after an order has been entered admitting a will to probate in common form, the will can still be challenged directly in a will contest at any time up to two years following the date of entry of the order." *Id.* at 712-13 (citations omitted).

Here, the Estate did file an amended petition for probate of the will in solemn form, but the trial court subsequently entered an order allowing the Estate to withdraw that amended petition.

The Estate argues that these issues should not be considered on appeal because they were not included in Dale's amended complaint to contest the will, which he filed in circuit court. The Estate contends that the sole basis for Dale's will contest was that *Adam's* signature was forged. Having carefully reviewed Dale's amended complaint, we note that he alleged that the will was "mysteriously" discovered by Ms. McHaney after a diligent search of Adam's home and that it was "fraudulently constructed and the signature is forged." After the Estate filed a motion for summary judgment, asserting that the will was executed in accordance with Tennessee law, Dale filed his response, maintaining that the will was "fabricated" after Adam's death. He asserted that Adam's signature had been copied, and he also challenged the signatures of the two witnesses. Dale contended that the witnesses had not signed their names to the will itself, as the space for their names on the third page contained the handwritten but "printed" names of the witnesses, and he suggested that those names were both "in the same handwriting," meaning they were not written in the handwriting of the witnesses themselves. The circuit court addressed the issue regarding the witness signatures at the summary judgment hearing and ultimately concluded that the witness signatures on the attachment were proper, rendering the will valid.

As previously noted, Tennessee Code Annotated section 32-4-104 provides, "After the filing of the certificate of the contest and the original will, in the office of the clerk of the appropriate court for trial, pursuant to § 32-4-101(a)(2), an issue or issues shall be made up, under the direction of the court, to try the validity of the will." This Court has previously explained that "[t]he contest in Circuit Court should not be upon the issues made by the petition and answer thereto filed in Probate Court," because in circuit court, "the issues are made up under the direction of the court." *Green v. Higdon*, 870 S.W.2d 513, 520 (Tenn. Ct. App. 1993) (citing Tenn. Code Ann. § 32-4-104). "In a proceeding of this nature, no particular form of pleading is required. All that is required is that the proponent shall offer it as a will and the contesting party shall deny it." *Cooper*, 837 S.W.2d at 610. "Such a denial by the contestants lets in all matters of defense." *Smith v. Smith*, 232 S.W.2d 338, 344 (Tenn. Ct. App. 1949). *Pritchard on Wills* describes the procedure as follows:

> After the filing of the certificate of contest and the original will in the office of the clerk of the court that is to try the contest, the issue is made up under the direction of the court to try the validity of the will. The cause is not necessarily tried upon the issue made in the complaint and answer. It may be tried on the issue or issues made up in the trial court under the direction of the court. No particular form of issue is required; all that is necessary is to show that the will is propounded and averred to be the last will of the decedent, on the one hand, and that the affirmation is denied on the other.

*Pritchard on Wills* § 382; *see also* 1 Pivnick, Lawrence A., *Tenn. Cir. Ct. Prac*. § 3:14 n.15

- 14 -

("[T]he issues in circuit court are made under the direction of the circuit judge, pursuant to T.C.A. § 32-4-104, following pleadings in no particular form wherein the party propounding the will [] affirms it to be the testator's will, and the contesting party [] denies it."). We also note that "[t]he proponents of the will have the initial burden of proving that the will was duly executed," but if "[p]roof of due execution makes out a prima facie case of the will's validity," "the burden of proof then shifts to the contestant to prove the will is invalid for some reason." *In re Est. of Eden*, 99 S.W.3d at 88. Bearing these principles in mind, we conclude that Dale's challenge to the will was not narrowly limited to only whether *Adam's* signature was a forgery, but whether the will was fraudulently constructed, and he fairly asserted a challenge to the signatures of the witnesses as well. Thus, we will proceed to consider the substance of Dale's first two issues on appeal, as they are properly before this Court.

### D. Witness Requirements

At this point in our discussion, we deem it appropriate to note that Dale is proceeding pro se on appeal. "'*Pro se* litigants who invoke the complex and sometimes technical procedures of the courts assume a very heavy burden.'" *Whalum v. Marshall*, 224 S.W.3d 169, 179 (Tenn. Ct. App. 2006) (quoting *Irvin v. City of Clarksville*, 767 S.W.2d 649, 652 (Tenn. Ct. App. 1988)). As this Court has repeatedly noted,

> Parties who decide to represent themselves are entitled to equal treatment by the court. *Murray v. Miracle*, 457 S.W.3d 399, 402 (Tenn. Ct. App. 2014). The court should take into account that many pro se litigants have no legal training and little familiarity with the judicial system. *Id.* However, the court must also be mindful of the boundary between fairness to the pro se litigant and unfairness to the pro se litigant's adversary. *Id.* While the court should give pro se litigants who are untrained in the law a certain amount of leeway in drafting their pleadings and briefs, it must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe. *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003).

*Augustin v. Bradley Cty. Sheriff's Office*, 598 S.W.3d 220, 225 (Tenn. Ct. App. 2019) (quoting *Lacy v. Mitchell*, 541 S.W.3d 55, 59 (Tenn. Ct. App. 2016)).

Dale argues on appeal that "the construction of the alleged Will does not meet the strict standards of TCA 32-2-110." He argues that neither witness signed the will itself, and the witness affidavits should be invalid because they are not "written upon the alleged Will nor are they 'attached thereuno;' as required by TCA 32-2-110." Accordingly, we must examine Tennessee Code Annotated section 32-2-110. Enacted in 1972, it provides:

> Any or all of the attesting witnesses to any will *may*, at the request of the

- 15 -

testator or, after the testator's death, at the request of the executor or any person interested under the will, make and sign an affidavit before any officer authorized to administer oaths in or out of this state, stating the facts to which they would be required to testify in court to prove the will, which affidavit shall be written on the will or, if that is impracticable, on some paper attached to the will, and the sworn statement of any such witness so taken shall be accepted by the court of probate when the will is not contested as if it had been taken before the court.

Tenn. Code Ann. § 32-2-110 (emphasis added).  These are sometimes called "self-proving affidavits." *See, e.g.*, *In re Est. of Washington*, No. M2022-01326-COA-R3-CV, 2023 WL 4886935, at \*4 (Tenn. Ct. App. Aug. 1, 2023); *In re Est. of Harris*, No. W2016-01768-COA-R3-CV, 2018 WL 6444136, at \*4 (Tenn. Ct. App. Dec. 10, 2018).  Essentially, section 32-2-110 provides "an avenue" for a party to prove that the requirements for a will in section 32-1-104 have been met.[9]  *In re Est. of Washington*, 2023 WL 4886935, at \*4 (citing *In re Estate of Lewis*, No. W2019-01839-COA-R3-CV, 2020 WL 6306515, at \*3 (Tenn. Ct. App. Oct. 28, 2020)).  Notably, however, section 32-2-110 "is separate and distinct from Tennessee Code Annotated Section 32-1-104" and its requirements.  *In re Est. of Morris*, No. M2014-00874-COA-R3-CV, 2015 WL 557970, at \*3 (Tenn. Ct. App. Feb. 9, 2015).  Thus, "Tenn. Code Ann. § 32-2-110 is permissive; it permits the use of witness affidavits to prove a will."  *In re Est. of Abbott*, No. W2017-02316-COA-R3-CV, 2018 WL 3689490, at \*3 (Tenn. Ct. App. Aug. 2, 2018).  In *In re Estate of Abbott*, for instance, we noted that there were no self-proving affidavits in the record but explained that "[t]hat absence does not affect our decision in any way."  *Id.*; *see also Battles v. First Union Bank*, No. 01A01-9809-CH-00497, 1999 WL 675126, at \*3 (Tenn. Ct. App. Sept. 1, 1999) ("The affidavit of the two witnesses would have made probate of the will easier, *see* Tenn. Code Ann. § 32-2-110, but it did not add to or take from the will itself.").  So, "[w]hile the witness signatures required by 32-1-104 are mandatory for proper execution, the affidavit contemplated by 32-2-110 is permissive, and serves a separate function

---

[9] Tennessee Code Annotated section 32-1-104(a) provides:

(a) The execution of a will, other than a holographic or nuncupative will, must be by the signature of the testator and of at least two (2) witnesses as follows:
(1) The testator shall signify to the attesting witnesses that the instrument is the testator's will and either:
(A) The testator sign;
(B) Acknowledge the testator's signature already made; or
(C) At the testator's direction and in the testator's presence have someone else sign the testator's name; and
(D) In any of the above cases the act must be done in the presence of two (2) or more attesting witnesses;
(2) The attesting witnesses must sign:
(A) In the presence of the testator; and
(B) In the presence of each other.

distinct from execution." *In re Estate of Morris*, 2015 WL 557970, at *3. Still, "'[t]he customary practice is for attesting witnesses to also sign affidavits at the time the will is executed, so that later probate of the will will be facilitated.'" *In re Est. of Chastain*, 401 S.W.3d 612, 620 (Tenn. 2012) (quoting *Pritchard on Wills* § 210).[10]

Here, the will itself consisted of three typewritten pages, and the third page included a typewritten attestation clause with the names and addresses of the two witnesses handwritten beneath it.[11] The will itself was followed by two documents, each entitled, "Affidavit of Witnesses to Prove Will." Each affidavit stated that it was made in accordance with Tennessee Code Annotated section 32-2-110, that Adam signed the will in each witness's sight and presence, and that each witness had signed the will at the instance and request of Adam and in his presence and in the presence of each other. Each witness had signed a separate affidavit.

Dale argues that neither witness signed the will itself, as he contends that the witnesses' handwritten but printed (non-cursive) names on the third page of the will appear to be in the same handwriting, meaning they did not write their names themselves. At the hearing on the motion for summary judgment, the trial judge observed, "if I look at the attestation clause, . . . it looked like a signature to me, and then on the will they just printed the name of the witnesses and attached the attestation clause to that." Thus, the trial judge concluded that "both [witnesses] signed the will in the attestation clause attached to it." He found "nothing wrong with the way that was done."

This Court recently considered a similar argument in *In re Estate of Childress*, No. E2022-00897-COA-R3-CV, 2023 WL 8828523, at *3 (Tenn. Ct. App. Dec. 21, 2023), where contestants complained that "the two witnesses 'merely printed their names in the attestation clause,' as opposed to inscribing their names in cursive, so 'neither witness intended her printed name in the attestation clause to be her signature so as to authenticate the attestation to the will.'" We rejected this argument because everyone knew they were gathered together to witness the testator's will, and there was "no dispute that each witness's name inscribed in the attestation clause is in her own handwriting." *Id.* Thus, we concluded that each witness "signed" the will in accordance with the statutory requirements. *Id.*

---

[10] The statute authorizes the use of self-proving affidavits to prove a will "only if a will is uncontested." *In re Est. of Chastain*, 401 S.W.3d at 620.

[11] "An attestation clause is a provision at the end of a typical will that is signed by the witnesses and recites the formalities required by the applicable statute." *In re Est. of Boye*, No. E2006-01441-COA-R3-CV, 2007 WL 3124424, at *1 n.2 (Tenn. Ct. App. Oct. 26, 2007). We note that "no formal attestation clause is necessary to validate a will provided it was executed in accordance with the statutory requirements." *Est. of Hamblin v. Heirs of Est. of Hamblin*, No. C.A. 38, 1988 WL 63500, at *2 (Tenn. Ct. App. June 24, 1988). However, "'an attestation clause reciting that the witnesses signed in the presence and at the request of the testator raises a strong presumption of that fact, and tends to discredit any subscribing witness who offers to testify to the contrary.'" *Id.* (quoting *Pritchard on Wills* § 198).

Here, however, Dale suggests that the names of the two witnesses appear to be printed in the *same* handwriting, which would mean it was not their own. Because this case was resolved on a motion for summary judgment, we will view the evidence in the light most favorable to Dale and assume for the sake of argument that the witness names handwritten on the third page of the will were not in the handwriting of the witnesses themselves. It is undisputed, however, that both witnesses signed the self-proving affidavits. We encountered the same situation, factually speaking, in *In re Estate of Morris*, 2015 WL 557970, at *2, where witnesses had signed self-proving affidavits but had not signed the will itself. In that case, we held that the witnesses' signing of only the separate affidavits was not sufficient to satisfy the requirements of Tennessee Code Annotated section 32-1-104, as it existed at that time, so the will was invalid. *Id.* at *2-4.

"Prior to the *Morris* decision, the law with respect to the validity of wills that only contained the witnesses' signatures on the attestation affidavit had not been decided." *In re Est. of Stewart*, 545 S.W.3d 458, 468 (Tenn. Ct. App. 2017). "The legislature responded to the *Morris* decision by enacting Tenn. Code Ann. § 32-1-104(b), the purpose of which was to render valid those wills executed prior to July 1, 2016, that were executed in the same manner as the will in *Morris* and here." *Id.* at 465-66. The newly added subsection (b) provided:

> (b)(1) For wills executed prior to July 1, 2016, to the extent necessary for the will to be validly executed, witness signatures affixed to an affidavit meeting the requirements of § 32-2-110 shall be considered signatures to the will, provided that:
> (A) The signatures are made at the same time as the testator signs the will and are made in accordance with subsection (a); and
> (B) The affidavit contains language meeting all the requirements of subsection (a).
> (2) If the witnesses signed the affidavit on the same day that the testator signed the will, it shall be presumed that the witnesses and the testator signed at the same time, unless rebutted by clear and convincing evidence. If, pursuant to this subsection (b), witness signatures on the affidavit are treated as signatures on the will, the affidavit shall not also serve as a self-proving affidavit under § 32-2-110. Nothing in this subsection (b) shall affect, eliminate, or relax the requirement in subsection (a) that the testator sign the will.

Tenn. Code Ann. § 32-1-104(b). "Clearly, the 2016 amendment . . . was intended to provide relief for testators who believed they had executed a valid will prior to July 1, 2016, when the two witnesses duly executed the attestation affidavit at the same time as the will was executed by the testator, but the witnesses failed to sign the will itself." *In re Est. of Stewart*, 545 S.W.3d at 464. In effect, "the legislature amended Tennessee Code

Annotated section 32-1-104 to validate wills executed in the manner of the will at issue here." *In re Est. of Morris*, No. M2016-02557-COA-R3-CV, 2017 WL 5304464, at \*1 (Tenn. Ct. App. Nov. 13, 2017). Subsection (b) allows "the integration of the affidavit (and the witnesses' signatures thereon) into the will such that an otherwise validly executed will may be entered into probate." *In re Est. of Fant*, No. W2016-02498-COA-R3-CV, 2017 WL 3492007, at \*3 (Tenn. Ct. App. Aug. 15, 2017) *perm. app. denied* (Tenn. Jan. 23, 2018); *see also In re Est. of Morris*, 2017 WL 5304464, at \*1.

Pursuant to subsection (b), then, wills executed prior to July 1, 2016, are validly executed "if the witness signatures are affixed to an affidavit in compliance with Tenn. Code Ann. § 32-2-110, provided that (1) the signatures are made contemporaneously with the testator's signature, and (2) the affidavit contains language meeting all of the requirements of Tenn. Code Ann. § 32-1-104(a)." *In re Estate of Stewart*, 545 S.W.3d at 461. Because Adam's will was executed in 2011, prior to July 1, 2016, to the extent necessary for his will to be validly executed, the "witness signatures affixed to an affidavit meeting the requirements of § 32-2-110 shall be considered signatures to the will," provided the signatures were made contemporaneously with the testator's signature and the affidavit contains language meeting the requirements of 32-1-104(a). *See id.*; Tenn. Code Ann. § 32-1-104(b). Dale argues that the circuit court could not rely on the witness affidavits in this case, for several reasons.

First, Dale argues that "the trial court relied upon" the affidavits to determine the validity of the will and "[t]his is not allowed under TCA 32-2-110 since this is a contested Will." Tennessee Code Annotated section 32-2-110 provides that a self-proving affidavit "stating the facts to which [the witnesses] would be required to testify in court to prove the will . . . shall be accepted *by the court of probate when the will is not contested* as if it had been taken before the court." (emphasis added). The newly added subsection 32-1-104(b)(2) further provides, "If, pursuant to this subsection (b), witness signatures on the affidavit are treated as signatures on the will, the affidavit shall not also serve as a self-proving affidavit under § 32-2-110." Thus, subsection (b) "prohibits affidavits, which are integrated into the will, from being used as self-proving affidavits." *In re Est. of Fant*, 2017 WL 3492007, at \*4. However, in this will contest case, the *circuit court* did not rely on the affidavits that accompanied the will in this manner. Instead, the Estate submitted different documents in support of its motion for summary judgment. Still, Dale insists that the affidavits accompanying the will cannot "be relied upon, in any way, to prove a Will in a Will-Challenge case," seeming to argue that the signatures on the self-proving affidavits cannot be considered signatures to the will pursuant to subsection (b) when the will is contested. However, this Court has previously applied subsection (b) in the context of will contests in order to render a will valid. *See, e.g.*, *In re Est. of Stewart*, 545 S.W.3d at 460, 470; *In re Est. of Fant*, 2017 WL 3492007, at \*1.

Dale next contends that the witness affidavits are insufficient because they did not state that "all three of the necessary persons, [were] in the same room, at the same time, at

the alleged signing of the Will." Tennessee Code Annotated section 32-1-104(b) requires that the witness signatures be "made at the same time as the testator signs the will and are made in accordance with subsection (a)." In turn, subsection (a) requires that the testator sign (or acknowledge a signature, or direct some else to sign) "in the presence of two (2) or more attesting witnesses," and those witnesses must sign "[i]n the presence of the testator" and "[i]n the presence of each other." Tenn. Code Ann. § 32-1-104(a). Here, each affidavit was entitled, "Affidavit of Witnesses to Prove Will." The affidavit executed by Ms. Willis stated that she witnessed the execution of the will and signed the will "at the instance and at the request of the Testator and in his presence, *and in the presence of each other*, at the place and on the date recited in said Last Will and Testament." (emphasis added). The affidavit executed by Ms. Mysinger contained the same language. Although the affidavits stated that each witness signed "at the request of the Testator and in his presence, and in the presence of each other," Dale suggests that the phrase referencing "each other" is "merely restating the previous statement" and again referring to signing in the presence of the testator. We disagree. Reading the "presence of each other" clause in this manner would render it superfluous. "Where a will is drafted by a lawyer, technical words used therein must be given technical meanings," and every word is presumed to have some meaning. *In re Est. of Morris*, 2015 WL 557970, at *3 (applying this rule to both the will and the witness affidavit drafted by the attorney). Thus, we read the "presence of each other" clause in the "Affidavit of Witnesses" to be a reference to the other witness, in accordance with the statutory requirement of Tennessee Code Annotated section 32-1-104. *See* Tenn. Code Ann. § 32-1-104(a)(2)(B) ("The attesting witnesses must sign: . . . (B) In the presence of each other."). Moreover, Tennessee Code Annotated section 32-1-104(b) states, "If the witnesses signed the affidavit on the same day that the testator signed the will, it shall be presumed that the witnesses and the testator signed at the same time, unless rebutted by clear and convincing evidence." *Id.* No such evidence was presented here.

Next, Dale argues that the witness affidavits "should be invalid due to the fact neither [one] is written upon the alleged Will nor are they 'attached thereunto;' as required by TCA 32-2-110." Tennessee Code Annotated section 32-2-110 provides that the affidavit "shall be written on the will or, if that is impracticable, on some paper attached to the will." On appeal, Dale contends that the witness affidavits were included in the same envelope with the will but were not physically attached to the will. However, Dale failed to raise this argument in response to the motion for summary judgment filed in circuit court. In fact, even in the motion to reconsider Dale filed *after* the entry of summary judgment, he stated that the witness signatures were not on the will itself but on the separate document "*just stapled to it*." (emphasis added). It was not until the day before the hearing on the motion to reconsider that Dale filed a motion to "void" the affidavits of the witnesses on the basis that they were not actually attached to the will as required by Tennessee Code Annotated section 32-2-110. When Dale presented this argument at the hearing the next day, the trial judge pointed out that Dale had not brought this issue to his attention at the summary judgment hearing, and Dale agreed, stating, "I didn't know it that day." Dale described this matter as "newly discovered," but the trial judge explained that the will had

- 20 -

been accessible in the court file since the will contest was filed, so "[t]his is not something new." The trial court denied the motion to reconsider.

We discern no error in the trial court's decision. "A Rule 59 motion should not be used to raise or present new, previously untried or unasserted theories or legal arguments." *Metz v. Metro. Gov't of Nashville & Davidson Cnty.*, 547 S.W.3d 221, 223 (Tenn. Ct. App. 2017) (quoting *Kirk v. Kirk*, 447 S.W. 3d 861, 869 (Tenn. Ct. App. 2013)). "Generally, therefore, an issue presented for the first time in a post-trial motion to alter or amend is waived as too late." *Induction Techs., Inc. v. Justus*, 295 S.W.3d 264, 268-69 (Tenn. Ct. App. 2008); *see also Cent. Parking Sys. of Tenn., Inc. v. Nashville Downtown Platinum, LLC*, No. M2010-01990-COA-R3-CV, 2011 WL 1344633, at *1 (Tenn. Ct. App. Apr. 7, 2011) ("[A]n issue first raised in a motion to alter or amend is not properly raised before the trial court."); *Chadwell v. Knox Cnty.*, 980 S.W.2d 378, 383 (Tenn. Ct. App. 1998) ("[W]e do not find any authority which authorizes a motion to alter or amend in order to allow a party to present her case under a new theory when the facts and law were available to be argued at the trial prior to the court's original decree.") (quotation omitted). Thus, "[t]his Court has held that an issue raised in the trial court for the first time in a post-judgment motion to alter or amend and supplement to such motion was waived on appeal when the argument advanced a new legal theory, rather than simply correcting an error of law." *Mossbeck v. Hoover*, No. E2020-00311-COA-R3-CV, 2021 WL 1714235, at *13 (Tenn. Ct. App. Apr. 30, 2021). Because this legal theory as to the validity of the will was not raised by Dale at the summary judgment stage, we deem it waived. Dale is not entitled to relief with respect to his first or second issue. We affirm the trial court's conclusion that the will was not invalid for lack of witness signatures and the denial of the motion to reconsider in that regard.

### E.    The Expert Affidavit

Having resolved Dale's first three issues, we now turn to his fourth issue: "Whether [the] Court Erred in dismissing Affidavit of Handwriting Expert[.]" He argues that the affidavit was "Dismissed Without Good Cause." Initially, we deem this argument misplaced because the trial court did not dismiss the affidavit of Dale's handwriting expert. The trial court did note, in its order granting summary judgment, that Dale's response to the motion was not filed at least five days prior to the hearing. "However," the court added, "even looking at the filings by the Contestant, Contestant fails to introduce any facts in the record which demonstrate a genuine dispute of material fact." The court found that the affidavit of the document examiner failed to refute the facts contained in the record. Accordingly, the court did not "dismiss" the affidavit.[12]

---

[12] In the incorporated transcript, the trial judge similarly remarked, "Technically I could just say I'm not even considering it because it wasn't filed within the time period prescribed by the Rules. But even looking at it, I don't think there's anything in it that demonstrates the existence of any specific facts that are in the record which could lead a rational trier of fact to find in favor of the nonmoving party."

Dale goes on to argue that the affidavit of the document examiner was sufficient to create a genuine issue of material fact as to whether Adam's signature was forged. However, Dale failed to respond to the Estate's statement of undisputed material facts, and the trial court deemed those admitted as a result. Consequently, it is undisputed, for purposes of summary judgment, that the Law Offices of Holmes, Rich and Sigler drafted a will for Adam prior to his death, it has an execution date of July 18, 2011, Ms. Willis and Ms. Mysinger "witnessed [Adam] signing" the very will introduced in this litigation, the will was notarized, and Adam was of sound mind "while signing" the will. Stated more succinctly, it is *undisputed* that Adam's will was prepared by the law firm prior to his death and that Ms. Willis and Ms. Mysinger witnessed *him signing it*. Thus, there is no genuine issue of material fact regarding whether the will was fabricated after Adam's death with a forged signature, even considering the affidavit of the forensic document examiner who opined that it "may be a simulation (copy) of a genuine Adam Wilson signature created using a much more recent signature as a model," based on his review of photographs and a copy of the will, but review of additional material "may provide the basis for a more definitive finding." "A disputed fact presents a genuine issue if 'a reasonable jury could legitimately resolve that fact in favor of one side or the other.'" *Martin*, 271 S.W.3d at 84 (quoting *Byrd*, 847 S.W.2d at 215). We find no *genuine* issue of material fact regarding whether the will was fraudulently constructed after Adam's death with a forged signature.[13]

---

[13] As previously noted, a will contest can be resolved by a Rule 56 motion for summary judgment. *See Owen*, 739 S.W.2d at 785-86 ("The contestants insist that a Tenn. Code Ann. § 32-4-101 will contest proceeding cannot be disposed of by a Tenn. R. Civ. P. 56 summary judgment. They argue that deciding a will contest on affidavits, depositions, answers to interrogatories or requests for admissions is contrary to the requirement in Tenn. Code Ann. § 32-2-104(a) that a will's proponents must prove the execution of the contested will by presenting the live testimony of the available attesting witnesses. We do not agree."); *Union Planters Nat. Bank of Memphis*, 588 S.W.2d at 760 ("[W]here there is no genuine issue as to any material fact summary judgment under Rule 56 is appropriate in a will contest proceeding."). In *Owen*, we stated that "[i]t is unnecessary, in every instance, for the proponent [of a will] to offer the live testimony of the available attesting witnesses," and we went on to discuss cases deeming deposition testimony sufficient. 739 S.W.2d at 786. In a later case, this Court recognized that *Owen* "addressed the question of whether a will contest could be determined on a motion for summary judgment" and "approved the motion for summary judgment," but "it was allowed where depositions were taken, cross-examination was available, and the issue of the type of proof was conceded." *Goss v. Priest*, No. C.A. 41, 1990 WL 16892, at *2 (Tenn. Ct. App. Feb. 27, 1990). In *Goss*, however, only affidavits had been filed in support of the motion for summary judgment. *Id.* at *1. We did not resolve the issue of whether affidavits alone were sufficient because, in any event, we found genuine issues of material fact existed, requiring reversal. *Id.* at *2.

We note that in *Taylor v. Holt*, 134 S.W.3d 830, 833 (Tenn. Ct. App. 2003), this Court concluded that a defendant "made a properly supported motion for summary judgment" where she filed the affidavits of the witnesses to the will "attesting to the circumstances surrounding the execution of the will." Because the plaintiff then failed to establish any disputed material facts regarding the execution of the will, we concluded that the defendant was "entitled to judgment as a matter of law because the will was executed and witnessed in conformity with the statute," and "the Trial Court did not err in holding that the legal requirements for the execution and witnessing of a will had been met." *Id.* at 834; *see also Connatser v. Connatser*, No. 03A01-9801-CV-00005, 1998 WL 340439, at *2-3 (Tenn. Ct. App. June 29, 1998) (affirming summary judgment as to the validity of a will where the movant filed "the affidavits of the

## F.    "Denial of Access to the Court"

Dale's brief on appeal combines the discussion of his last two issues into a single section, which he entitled "Denial of Access to the Court," so we will do the same. The fifth issue he raised was "[w]hether Court erred in refusing to allow Plaintiff to call witnesses, present evidence." The sixth issue Dale raised on appeal was "[w]hether court erred in dismissing case without reading and ruling on the pleadings filed in the case[.]" However, he cites only very limited legal authority with respect to these issues, so we will analyze his issues in light of the authority he cites. *See FedTrust Fed. Credit Union v. Brooks*, No. W2022-01119-COA-R3-CV, 2023 WL 3994520, at *2 (Tenn. Ct. App. June 14, 2023) (quoting *Murray*, 457 S.W.3d at 402) ("In considering appeals from pro se litigants, the court cannot write the litigants' briefs for them, create arguments, or 'dig through the record in an attempt to discover arguments or issues that [they] may have made had they been represented by counsel.'").

Dale primarily relies on a case from the United States Supreme Court, *Haines v. Kerner*, 404 U.S. 519, 520 (1972). It involved a prison inmate who brought suit alleging "physical injuries suffered while in disciplinary confinement and denial of due process in the steps leading to that confinement." *Id.* The district court dismissed the complaint for failure to state a claim, suggesting that "only under exceptional circumstances should courts inquire into the internal operations of state penitentiaries[.]" *Id.* In a very brief per curiam opinion, the United States Supreme Court reversed, stating, quite simply,

> Whatever may be the limits on the scope of inquiry of courts into the internal administration of prisons, allegations such as those asserted by petitioner, however inartfully pleaded, are sufficient to call for the opportunity to offer supporting evidence. We cannot say with assurance that under the allegations of the pro se complaint, which we hold to less stringent standards than formal pleadings drafted by lawyers, it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'

---

attorney who drafted the will and the two attesting witnesses," which "established that the will was duly executed").

    In the case at bar, the Estate likewise supported its motion for summary judgment with only affidavits. Dale does not argue on appeal that deposition testimony should have been filed instead. Thus, we will not address the issue *sua sponte*. *See Sneed v. Bd. of Pro. Resp. of Sup. Ct.*, 301 S.W.3d 603, 615 (Tenn. 2010) ("It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her[.]"). He also failed to raise the issue in the trial court, so we deem it waived. *See Dye v. Witco Corp.*, 216 S.W.3d 317, 321 (Tenn. 2007) ("These arguments were not raised in opposition to Witco's motion for summary judgment and are not mentioned in the trial court record.... [W]e conclude that the issue is waived.").

*Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Thus, the judgment was reversed for the inmate to have "an opportunity to offer proof." *Id.* at 521. Although the case involved a pro se litigant, we fail to see how it entitles Dale to any relief here. Dale had "an opportunity to offer proof" in response to the motion for summary judgment; he simply failed to meet his burden. One's "status as a pro se litigant will not excuse him from presenting the evidence required to carry a non-movant's summary judgment burden." *Teaster v. Tenn. Dep't of Corr.*, No. 01A01-9608-CH-00358, 1998 WL 195963, at *5 (Tenn. Ct. App. Apr. 24, 1998). Moreover, the *Haines* case does not entitle Dale to the opportunity to call witnesses at a hearing on a post-judgment motion to reconsider.

Next, with respect to the witnesses he sought to call at the hearing, Dale cites the "missing witness rule," which he, admittedly, seeks to have "employed in a rather novel manner." "Tennessee's law of evidence recognizes the common law rule that a party 'may comment upon the failure . . . to call an available and material witness whose testimony would ordinarily be expected to favor' the opposing party." *In re Mattie L.*, 618 S.W.3d 335, 342 (Tenn. 2021) (quoting *State v. Francis*, 669 S.W.2d 85, 88 (Tenn. 1984)). Thus, "[t]he missing witness rule may apply when the evidence shows that a witness who was not called to testify knew about material facts, had a relationship with the party 'that would naturally incline the witness to favor the party,' and the witness was available to the process of the court." *Id.* (quoting *Francis*, 669 S.W.2d at 88). Dale notes that during the hearing on the motion to reconsider, he asked to call the trial judge's administrative assistant to the witness stand regarding the setting of his motions, and he asked to call an individual who worked in the court clerk's office regarding the issuance of subpoenas. The trial judge denied these requests, so Dale suggests that the missing witness rule should apply. "The missing witness rule, however, is inapplicable where the witness was equally available to both parties and it seems no more likely that his testimony would favor the plaintiff than the defendant." *Bland v. Allstate Ins. Co.*, 944 S.W.2d 372, 379 (Tenn. Ct. App. 1996) (citing *Waller v. Skeleton*, 31 Tenn. App. 103, 118, 212 S.W.2d 690, 697 (1948)). We deem this to be the case with the trial judge's assistant and the employee of the court clerk's office, as they were equally available to both parties and their testimony would not favor one over the other. Thus, the missing witness rule is inapplicable.

Finally, regarding his failure to set his motions for hearing as required by the local rules, Dale includes a block quote from this Court's decision in *Bowers v. Gutterguard of Tennessee, Inc.*, No. M2002-02877-COA-R3-CV, 2003 WL 22994302, at *3 (Tenn. Ct. App. Dec. 17, 2003), in which we recognized the "interplay" between a certain local rule at issue in that case and the goal of the Tennessee Rules of Civil Procedure "to insure that cases and controversies be determined upon their merits and not upon legal technicalities or procedural niceties." Although the appellant in *Bowers* was in violation of a local rule, the issue before us was whether the appellant was entitled to Rule 60 relief. *Id.* at *1. Again, however, this case does not entitle Dale to relief on appeal. As we explained above, "'[w]hile the court should give pro se litigants who are untrained in the law a certain amount of leeway in drafting their pleadings and briefs, it must not excuse pro se litigants

from complying with the same substantive and procedural rules that represented parties are expected to observe.'" *Augustin*, 598 S.W.3d at 225 (quoting *Lacy*, 541 S.W.3d at 59). This includes local rules. *See, e.g.*, *Robinson v. Ault*, No. E2019-00516-COA-R3-CV, 2020 WL 2843900, at *2 (Tenn. Ct. App. June 2, 2020); *Metro. Gov't of Nashville & Davidson Cnty. v. Cuozzo*, No. M2007-01851-COA-R3-CV, 2008 WL 3914890, at *5 (Tenn. Ct. App. Aug. 25, 2008). Dale contends that because he was "a non-local litigant," he should have been made aware of the local rules. However, "the trial judge is under no obligation to become an advocate for or to assist and guide the *pro se* layman through the trial thicket," as the pro se litigant "assumes the responsibility for his inadequacies." *Cole v. State*, 798 S.W.2d 261, 264 (Tenn. Crim. App. 1990) (quotations omitted). The trial judge is "under an obligation to act 'as an impartial, neutral arbiter' rather than 'an advocate for the self-represented litigant.'" *Soto v. Presidential Properties, LLC*, No. E2020-00375-COA-R3-CV, 2021 WL 1626275, at *6 (Tenn. Ct. App. Apr. 27, 2021) (quoting *Discover Bank v. McCullough*, No. M2006-01272-COA-R3-CV, 2008 WL 245976, at *4 (Tenn. Ct. App. Jan. 29, 2008). *See id.* (rejecting the notion that the trial judge erroneously "failed to advise" a pro se litigant that he could refute the testimony presented by the plaintiffs); *see also Benanti v. Satterfield*, No. E2018-01848-COA-R3-CV, 2020 WL 1491374, at *8 (Tenn. Ct. App. Mar. 27, 2020) (explaining that a trial judge was under no obligation to advise a pro se plaintiff that he could amend his complaint).

## V. CONCLUSION

For the aforementioned reasons, we affirm and remand to the probate court for further probate proceedings. Costs of this appeal are taxed to the appellant, Dale Wilson, for which execution may issue if necessary.

_____
CARMA DENNIS MCGEE, JUDGE